UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TOMMIE JO MARSILIO | ) | Case  No. 5:11-CV-1974 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE SARA LIOI |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| VICTOR VIGLUICCI | ) | KATHLEEN B. BURKE |
| | ) | |
| Defendant. | ) | REPORT AND RECOMMENDATION |
| | ) | (Doc. 14) |
| | ) | |

Pursuant to the January 25, 2012, Order of Reference (Doc. 6), the Partial Motion for

Judgment on the Pleadings (the "Motion") (Doc. 14) filed by Defendant Victor Vigluicci

("Defendant" or "Vigluicci") is before the undersigned for a Report and Recommendation.  In

the Motion, Vigluicci seeks Judgment in his favor only on Count I of the three-Count Complaint

filed by Plaintiff Tommie Jo Marsilio ("Plaintiff" or "Marsilio"). Count I is titled "42 U.S.C. §

1983, First Amendment – Freedom of Speech." Doc. 1, p. 4; Doc. 14.[1]  In Count I, Marsilio

alleges that Vigluicci, the Portage County Prosecutor, terminated her from her former position as

an assistant county prosecutor because she "exercise[ed] her rights pursuant to the First

Amendment of the United States Constitution."  Doc. 1, p. 4, ¶ 21.

The Motion has been briefed fully.[2]  As discussed below, the Motion should be granted

because Plaintiff's former position as an assistant county prosecutor was a

---

[1] Counts II and III are not at issue on this Motion.  Count II is titled "Fourteenth Amendment – Equal Protection" and Count III is titled "Ohio Sex Discrimination."

[2] Defendant filed the Motion on March 30, 2012.  Doc. 14.  On June 4, 2012, Plaintiff filed a Brief in Opposition. Doc. 20.  On June 18, 2012, Defendant filed a Reply Memorandum in Support of the Motion.  Doc. 21.

confidential/policymaking position.  Under well established case law, public employees who hold confidential/policymaking positions do not enjoy protection from being terminated for speech related to political or policy matters.  Moreover, Vigluicci is also entitled to qualified immunity in his individual capacity[3] with respect to Count I.

## I.  Factual Allegations[4]

Plaintiff was employed by Defendant as an assistant prosecutor from July 2007 through September 18, 2009.  Doc. 1, ¶ 2.  Plaintiff was terminated from her employment on September 18, 2009.  Doc. 1, ¶ 2.  During her term of employment, Plaintiff accumulated a good work record.  Doc. 1, ¶ 3.  At all relevant times, Defendant was the Portage County Prosecutor.  Doc. 1, ¶ 4.

During 2009, Plaintiff was a candidate for the elected public office of Portage County Municipal Judge.  Doc. 1, ¶ 5.  During that candidacy, Plaintiff prepared an advertisement that was proposed to run in the local news media.  Doc. 1, ¶ 6.  The proposed advertisement did not identify Plaintiff as being employed by the Portage County Prosecutor.  Doc. 1, ¶ 7; 14-2.  The proposed advertisement included the following language:  "The 'Good Old Boys' Say Elect

---

[3] Marsilio sued Vigluicci in both his official and individual capacities.  Doc. 1.

[4] The facts recited herein are taken from the Complaint and from documents referred to in the Complaint, copies of which Defendant and Plaintiff have attached to their Briefs filed in connection with the Motion for Judgment on the Pleadings.  In ruling on a motion to dismiss, a court may consider: (1) documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice.  *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011); *Whittiker v. Deutsche Bank Nat'l Trust Co*., 605 F.Supp.2d 914, 924–25 (N.D. Ohio 2009).  Plaintiff and Defendant agree that the Court may consider attachments to the Rule 12 Briefing that are referenced in the Complaint and that are central to the Plaintiff claim(s).  Doc. 14, p. 2, FN 2; Doc. 20, p. 4, FN 3.  Those attachments include the advertisement at issue (Doc. 14-2) and correspondence between Plaintiff and Defendant dated September 14th, 15th and 18th of 2009 (Docs. 14-3; 14-4; 20-1; 20-2).

Kevin Poland[5] – Real People Say Elect Tommie Jo Marsilio – She is not a member of the

Ravenna 'Good Old Boys' corruption club – Tommie Jo is one of us."  Doc. 14-2.  In September

2009 Plaintiff distributed a copy of the proposed advertisement to her local political party's

central committee and her campaign committee.  Doc. 1, ¶ 8.  Without Plaintiff's knowledge or

consent, a copy of the proposed advertisement was given to Plaintiff's opponent by someone

unknown to Plaintiff.  Doc. 1, ¶ 9.  Thereafter, Defendant received a copy of Plaintiff's proposed

advertisement.  Doc. 1, ¶¶ 9-10, Doc 20-2.

    After receiving a copy of Plaintiff's proposed advertisement, on September 14, 2009,

Defendant conducted a meeting with Plaintiff to discuss the proposed advertisement.  Doc. 1, ¶

10.  During that meeting, Defendant told Plaintiff to stop all circulation of the proposed

advertisement and to apologize to her opponent or she would be fired.  Doc. 1, ¶ 11.  On

September 14, 2009, Plaintiff sent a memo to Defendant memorializing the conversation, and

advising Defendant that the speech at issue was protected political speech.  Doc. 1, ¶ 12; 14-3.

On September 15, 2009, Defendant responded in writing to Plaintiff, restating that she should

cease distribution of the proposed advertisement and apologize to her opponent.  Doc. 1, ¶ 13;

Doc. 14-4; Doc. 20-1.  In his September 15, 2009, letter Defendant stated, in part:

> . . . you [Plaintiff] have made a written allegation of "corruption" against a fellow
> attorney and elected public official. When asked to produce any evidence of
> corrupt activity on the part of this individual at our meeting on September 14,
> 2009 you were unable to do so.  As prosecutors and law enforcement officers,
> such allegations by us against others are very serious and carry enormous
> ramifications.  The mere allegation of such conduct against an attorney or public
> official will cause irreparable damage to character and reputation, both of which
> are the hallmarks of any successful attorney or public official.  As my
> representative in the community, I expect you to act with discretion and
> professionalism at all times.  We do not publicly allege illegal conduct against
> anyone without the filing of formal charges by Complaint or Indictment.  The

---

[5] Kevin Poland was an attorney and elected public official.  Doc. 14-4, Doc. 20-1.

> publication of such allegations without foundation or basis is contrary to my
> philosophy of operating this office in an ethical, professional manner.

Doc. 14-4; Doc. 20-1.  Defendant also indicated that, if Plaintiff did not take both steps he

requested by September 18, 2009, Plaintiff's employment with the Portage County Prosecutor's

Office would terminate.  Doc. 1, ¶ 13; Doc. 14-4; Doc. 20-1.  Plaintiff "did not comply with

Defendant Vigluicci's directive and her employment was terminated by Defendant Vigluicci on

September 18, 2009."[6]  Doc. 1, ¶ 14; Doc. 14-3; Doc. 20-2.

## II.  Standard for Ruling on a Motion for Judgment on the Pleadings

"The standard of review for a Rule 12(c) motion is the same as for a motion under Rule

12(b)(6) for failure to state a claim upon which relief can be granted."  *Fritz v. Charter Tp. of*

*Comstock*, 592 F.3d 718, 722 (6th Cir. 2010)(citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d

509, 511-12 (6th Cir. 2001)(internal citations omitted).  "For purposes of a motion for judgment

on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party

must be taken as true, and the motion may be granted only if the moving party is nevertheless

clearly entitled to judgment."  *Fritz*, 592 F.3d at 722 (citing *JPMorgan Chase Bank, N.A. v.*

*Winget,* 510 F.3d 577, 581 (6th Cir.2007) (internal citations and quotation marks omitted)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and

plain statement' of the claim showing that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 677 (2009) (quoting Federal Rule of Civil Procedure 8(a)(2)).  A defendant is entitled

to "fair notice of what the . . . claim is and the ground upon which it rests."  *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

---

[6] It appears that Plaintiff may have acquiesced in Defendant's directive to cease circulation of the proposed advertisement but refused to apologize to her opponent in the judicial race.   Doc. 14-3, Doc. 20-2.

to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570.).  While great detail is not required, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F.Supp.2d 914, 924–25 (N.D. Ohio 2009) (citing and relying on *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 550 (6th Cir. 2008) and *Erickson v. Pardus*, 551 U.S. 89 (2007) for the proposition that specific facts are not necessary)).

Defendant does not argue that Plaintiff has not sufficiently pled facts to provide fair notice of what Plaintiff is claiming in Count I.  Rather, Defendant asserts that, as a matter of law, Plaintiff does not have a First Amendment – Freedom of Speech claim and that Defendant is entitled to qualified immunity.  Doc. 14; Doc. 20.

### III. Law and Analysis

In Count I, Plaintiff seeks vindication under 42 U.S.C. § 1983 for Defendant's alleged violation of her First Amendment rights.  Doc. 1, ¶¶ 18-21.  She alleges that Defendant as Portage County Prosecutor was acting according to policies, practices and procedures established by the governmental entity.  Doc. 1, ¶ 23.   She also alleges that her proposed campaign advertisement was protected speech pursuant to the First Amendment.  Doc. 1, ¶ 24.  Finally, she alleges that Defendant terminated her for exercising her rights pursuant to the First Amendment and that such conduct constitutes a violation of 42 U.S.C. § 1983.  Doc. 1, ¶ 21.

"To state a claim under § 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Correctional Medical Services*, 555 F.3d 543, 549 (6th Cir. 2009); *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006).  Because § 1983 "is not itself a source of

5

substantive rights," the first step in a § 1983 claim therefore "is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Defendant has not contested that he was acting under color of state law.  Doc. 14; Doc. 21. Accordingly, the Court's focus in reviewing Plaintiff's § 1983 claim is on whether Plaintiff has sufficiently alleged a violation of a constitutional right.

Plaintiff alleges that her proposed campaign advertisement was protected speech under the First Amendment of the United States Constitution and that Defendant terminated her for exercising her rights pursuant to the First Amendment of the United States Constitution.[7]  Doc. 1, ¶¶ 20-21.  When an individual chooses to enter government service, that individual by necessity must accept certain limitations on her freedoms.  *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).  "Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for efficient provision of public services."  *Id.*  However, an individual who works for the government remains a citizen and there are limits to a public employer's ability to restrict an individual's liberties.  *Id.* at 419.

"To establish a prima facie case of First Amendment retaliation under 42 U.S.C. § 1983, Appellant must demonstrate that: (1) he was engaged in a constitutionally protected activity; (2) he was subjected to adverse action or deprived of some benefit; and (3) the protected speech was

---

[7] In her Complaint, Plaintiff does not specifically allege that her refusal to apologize constitutes protected speech. Doc. 1.

a "substantial" or "motivating factor" in the adverse action."[8] *Farhat v. Jopke*, 370 F.3d 580, 588(6th Cir. 2004) (citing *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir.2003)).

### A.  Plaintiff's speech was not protected constitutionally.

When analyzing whether the Plaintiff was engaged in constitutionally protected speech, it must first be determined whether the speech can be "characterized as constituting speech on a matter of public concern." *Connick v. Myers*, 461 U.S. 138, 146 (1983).  As discussed in greater detail *infra*, Plaintiff's speech constituted speech on a matter of public concern.  Also, as discussed *infra*, Plaintiff was a confidential/policymaking employee.  Therefore, the governmental interests in this case outweigh Plaintiff's First Amendment rights.  Accordingly, Defendant is entitled to judgment as a matter of law on Count I of Plaintiff's Complaint.

### 1.  Plaintiff's speech constituted speech on a matter of public concern.

In her Brief, Plaintiff separates her "speech" into two categories: (a) the campaign advertisement, as to which Plaintiff alleges Defendant attempted to impose a prior restraint; and (b) her refusal to apologize to her judicial opponent, which Plaintiff alleges involved an attempt by the Defendant to compel speech.  Doc. 20, pp. 6, 12.  Plaintiff did not plead this distinction in her Complaint but, even if she had, that would not require the Court to conduct a separate analysis of each of the two categories delineated by the Plaintiff.  *See Riley v. National Federation of the Blind of NC, Inc.*, 487 U.S. 781, 796-798 (1988) (recognizing that compelled speech is entitled to First Amendment protection but not establishing a separate framework for analyzing a compelled speech claim versus a compelled silence claim); *see also C.N. v.*

---

[8] Defendant's motion is resolved favorably to Defendant based on the Court's review and analysis of the first of the three prong of the three part test for establishing a prima facie case of a First Amendment retaliation claim. Accordingly, it is not necessary for the Court to consider the second and third prongs.

*Ridgewood Bd. of Educ.*, 430 F.3d 159, 178 (3rd Cir. 2005) (indicating that, if an entity can restrict speech, it may also compel speech).

The determination as to whether speech is on a matter of public concern is a question of law. *Connick*, 461 U.S. at 148, FN. 7.  To determine whether the speech constitutes speech on a matter of public concern, the "content, form, and context of a given statement" in light of the whole record must be reviewed. *Id.* at 148-149.  If speech "cannot be fairly considered as relating to any matter of political, social or other concern to the community" said speech generally will not be deemed to be speech on a matter of public concern and government employers should have wide latitude in the management of their offices "without intrusive oversight by the judiciary in the name of the First Amendment." *Id.* at 146.

Defendant concedes, for purposes of the Motion, that Plaintiff's campaign advertisement is speech that addresses matters of public concern.  Doc. 14-1, p. 5.  Accordingly, it is not necessary for the Court to set forth an analysis regarding whether the speech at issue in this case constitutes speech on a matter of public concern.

### 2. The *Pickering* balance weighs in favor of the Defendant.

#### a. The *Pickering* balancing test.

Having determined that Plaintiff's speech constitutes speech on a matter of public concern, the court must next employ the balancing test set forth in *Pickering v. Board of Educ.*, 391 U.S. 563 (1968). *Dambrot v. Central Michigan Univ.*, 55 F.3d 1177, 1186 (6th Cir. 1995). Under the *Pickering* balancing test, "the interests of the employee, as a citizen, in commenting upon matters of public concern" are weighed against "the interest of the State, as an employer, in promoting efficiency of the public services it performs through its employees." *Dambrot*, 55 F.3d at 1185 (quoting *Pickering*, 391 U.S. at 568).  "The *Pickering* balance requires full

consideration of the government's interest in the effective and efficient fulfillment of its responsibilities to the public." *Connick*, 461 U.S. at 150.   When applying the *Pickering* balance, if the employee's speech is determined to constitute speech on a matter of public concern and if the employee's free speech interests outweigh the efficiency interests of the government, then an employee's First Amendment rights have been violated.[9]  *Dambrodt*, 55 F.3d at 1186.

### b. The *Elrod/Branti* exception.

Subsequent to *Pickering*, a line of cases emerged leading to the creation of the *Elrod/Branti* exception, i.e., if the employer "can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved," the employee can be dismissed solely on the basis of political affiliation. *Elrod v. Burns,* 427 U.S. 347, 367 (1976); *Branti v. Finkel*, 445 U.S. 507, 518 (1980).  In cases where the *Elrod/Branti* exception applies, the *Pickering* balance is deemed to tip in favor of the government as a matter of law.  *Rose v. Stephens*, 291 F.3d 917, 921 (6th Cir. 2002) (discussed *infra*).

In *Elrod*, the Supreme Court rejected, as justification for the wholesale dismissal of government employees based on their political affiliation, the argument that political loyalty of employees is necessary to protect the governmental interest that "representative government not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate." *Elrod,* 427 U.S. at 367.  "That interest," the Supreme Court stated, "can be fully satisfied by limiting patronage dismissals to policymaking

---

[9] If a court determines that the employee's free speech interests outweigh the governmental interests, then the court must determine whether the First Amendment violation was a substantial or motivating factor in the employee's termination and, if it was, whether the employer can demonstrate that the employee would have been terminated if it were not for the speech. *Dambrodt*, 55 F.3d at 1186.

positions." *Id.* at 372.  In *Branti*, the Supreme Court recognized that, under *Elrod*, "party

affiliation may be an acceptable requirement for some types of government employment" (445

U.S. at 517) but held that the exception did not apply to an assistant county public defender

because "[t]he primary, if not the only, responsibility of an assistant public defender is to

represent individual citizens in controversy with the State." *Branti*, 445 U.S. at 519.  The Court

expressly noted the distinction between the role of a public defender and "the broader public

responsibilities of an official such as a prosecutor." *Id.* FN. 13.[10]  The *Elrod/Branti* exception

thus limits the First Amendment rights of policymaking or confidential employees.

In *McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir. 1996), the Sixth Circuit set forth four

categories of positions that fall within the *Elrod/Branti* exception. The Sixth Circuit expressly

did so for the guidance of district courts in future cases such as this one. *Id.*  The four categories

are:

**Category One:** positions specifically named in relevant federal, state, county or municipal
law to which discretionary authority with respect to the enforcement of that law or the carrying
out of some other policy of political concern is granted;

**Category Two:** positions to which a significant portion of the total discretionary authority
available to category one position-holders has been delegated; or positions not named in law,
possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of
discretionary authority commonly held by category one positions in other jurisdictions;

**Category Three**: confidential advisors who spend a significant portion of their time on the
job advising category one or category two position-holders on how to exercise their statutory or
delegated policymaking authority, or other confidential employees who control the lines of
communication to category one positions, category two positions or confidential advisors.

**Category Four:** positions that are part of a group of positions filled by balancing out political
party representation, or that are filled by balancing out selections made by different

---

[10] However, because *Branti* did not involve a prosecutor or assistant prosecutor, the Court noted that it expressed no
opinion as to whether a deputy prosecutor could be dismissed on grounds of political party affiliation or loyalty.
*Branti*, 445 U.S. at 519, FN. 13.

governmental agents or bodies.

*Id.*

 The Sixth Circuit has applied the *Elrod/Branti* exception in contexts other than discharges for political affiliation, including cases involving terminations of confidential/policymaking employees for actual speech.  *Rose*, 291 F.3d at 921.   In *Rose*, the Sixth Circuit "adopted the rule that, where a confidential or policymaking public employee is discharged on the basis of speech related to his political or policy views, the *Pickering* balance favors the government as a matter of law."  *Id.*  The Sixth Circuit reasoned that the foregoing rule flows logically from the political patronage cases and that the government has a legitimate interest in securing employees who will loyally implement its policies.  *Id.* at 922.  "Permitting the government to dismiss employees who fall within the policymaking or confidential categories when they voice opinions on political or policy-related issues is an appropriate means of promoting that interest because the government already enjoys the right to choose or dismiss those employees on the basis of their political views."  *Id.*  Because an overt act of disloyalty necessarily causes significant disruption in the working relationship between confidential employees and their superiors, the balance under *Pickering* tips in favor of the government and "it is appropriate to presume that the government's interest in efficiency will predominate."  *Id.* at 923.

### c. Application of the *Elrod/Branti* exception.

 Based on the evolution of the *Elrod/Branti* exception and the Sixth Circuit's application of those principles, the Court must determine: (1) whether Marsilio's speech related to political or policy views; and (2) whether Marsilio, as an assistant county prosecutor, was a confidential or policymaking employee.

### i. Marsilio's speech was related to political or policy views.

Both Defendant and Plaintiff agree that the Plaintiff's speech related to politics.  Doc. 1; Doc. 14-1, p. 9; Doc. 20, p. 12.  However, Plaintiff argues that the speech must be job-related to fall within the *Elrod/Branti* exception.  Doc. 20, p. 12.  Contrary to Plaintiff's position, speech need not be job-related to fall within the *Elrod/Branti* exception.  While the Sixth Circuit in *Rose* recognized that "it is insubordination for an employee whose position requires loyalty to speak on job-related issues in a manner contrary to the position of his employee," that does not mean that the speech must be job-related to fall within the *Elrod/Branti* exception.

In *Simasko v. County of St. Clair*, 417 F.3d 559 (6th Cir. 2005)*, the Sixth Circuit upheld the termination of an assistant county prosecutor where the termination was allegedly based on the plaintiff's failure to support his supervisor's judicial candidacy and his failure to persuade his brother to refrain from publicly supporting the supervisor's opponent.  Plaintiff seeks to distinguish *Simasko* from this case on the basis that *Simasko* is a political affiliation case.  Doc. 20, p. 12, FN 6.  *Simasko* is not simply a political affiliation case; the Sixth Circuit clearly stated in *Simasko* that "[t]he *Elrod/Branti* exception applies not only to discharges based on political affiliation, but also to terminations based on actual speech."  *Simasko*, 417 F.3d at 562 (citing *Rose v. Stephens*, 291 F.3d 917, 921 (6th Cir. 2002).

The facts in *Simasko* are similar to this case.  Here, Plaintiff's speech or unwillingness to speak was political and/or related to policy views.  In *Simasko*, after losing to his supervisor in a primary race for a judicial position, the plaintiff refused to acquiesce to his supervisor's demands that he publicly support her in the general election (he chose to remain neutral) and that he convince his brother not to support her opponent.  *Id.*  Similar to Marsilio, who asserts that

Vigluicci's demand for an apology was an effort to compel speech, Simasko also did not want to speak as his supervisor demanded.  *Simasko* demonstrates that speech need not be job-related to invoke the *Elrod-Branti* exception and that speech, whether it is compelled or restrained, is also covered by the exception.    Accordingly, the analysis in *Simasko*, which involved application of the *Elrod/Branti* exception to a case not specifically involving job-related speech should not be disregarded as suggested by Plaintiff.

The Court agrees with the parties that Marsilio's speech, which related to a judicial election, concerned politics and/or policy views.  Also, as discussed, Plaintiff has failed to convince this Court that the speech at issue must be job-related to fall within the *Elrod/Branti* exception.  Accordingly, the first of the two *Elrod/Branti* exception requirements is met, i.e., Plaintiff's speech concerned politics and/or policy views.

### ii.  Marsilio, as an assistant county prosecutor, was a confidential/policymaking employee.

As discussed above, the Sixth Circuit has established a framework to guide district courts in determining which public employees occupy confidential/policymaking positions and also has held specific positions to fall within the *Elrod/Branti* exception.  In *McCloud*, the Court of Appeals described four categories of positions that are confidential/policymaking.  In *Simasko* and *Monks v. Marlinga*, 923 F.2d 423 (6th Cir. 1991), the Sixth Circuit determined that assistant county prosecutors in Michigan fall within the exception.  While the Sixth Circuit has not expressly addressed the position of assistant county prosecutor in Ohio, the District Court for the Southern District of Ohio has.  In *Collins v. Allen*, 2006 WL 2505928 (S.D. Ohio 2006), that court applied the *Elrod/Branti* exception, holding that the employment relationship between an

Ohio elected prosecutor and an assistant prosecutor requires personal loyalty and a high degree of trust and confidence.  2006 WL 2505928, *8.

Plaintiff argues that the Defendant's reliance on *Monks* and *Collins* is misplaced and that neither the United States Supreme Court nor the Sixth Circuit has set forth a bright line rule that assistant prosecutors are automatically exempt from First Amendment speech protections.  Doc. 20, p. 11.  As such, Plaintiff asserts that the Court cannot reach the issue whether Plaintiff was a confidential/policymaking employee without engaging in fact finding.  Doc.  20, pp. 3-4.  Plaintiff is wrong; fact-finding is not required.  The question whether a public employee occupies a confidential/policymaking position is to be determined based on "'the inherent duties of the position in question, not the work actually performed by the person who happens to occupy the office.'"  *Monks*, 923 F.2d at 425 (quoting *Williams v. River Rouge,* 909 F.2d 151, 154 (6th Cir. 1990)).

Plaintiff also seeks to distinguish *Monks* because that case involved the application of a Michigan statute that delineated the duties and role of assistant prosecutors. The statute provided that an assistant prosecutor must "'perform any and all duties pertaining to the office of prosecuting attorney.'"  *Monks*, 923 F.2d at 425-426 (citations omitted).  As a result, the Sixth Circuit held that "the job of assistant prosecutor is a policy-making position."  *Id.*

The Ohio statute that permits prosecutors to appoint assistants does not specify their role in the way that the Michigan statute does.[11]  However, the Attorney General of Ohio has filled

---

[11] O.R.C. § 309.06(A) states, in pertinent part:

> The prosecuting attorney may appoint any assistants . . . who are necessary for the proper performance of the duties of his office and fix their compensation, not to exceed, in the aggregate, the amount fixed by the judges of the court of common pleas. . . .

that gap in several opinions, the most recent of which issued in 2011.  In the 2011 opinion, the

Ohio Attorney General, relying in part on prior Ohio Attorney General opinions and the decision

in *Bennett v. Celebrezze*, 34 Ohio App.3d 260 (Lorain County 1986), described the role of

assistant prosecutors in Ohio as follows:

> . . . the General Assembly has not changed the duties or role of assistant county prosecuting attorneys.  Assistant county prosecuting attorneys are appointed by county prosecuting attorneys and continue to act in their stead.
>
> ***
>
> [I]t has long been the accepted opinion in this state that an assistant, is for all practical purposes, the alter ego of the prosecuting attorney and is authorized to act in his place in almost all matters.  An assistant county prosecuting attorney is thus appointed to perform the duties of, and exercise the powers conferred upon, the county prosecuting attorney.
>
> Ohio Attorney General Opinion 2011-041, *2 (November 14, 2011) (the "2011 Ohio Attorney General Opinion") (internal quotations and citations omitted).

Plaintiff argues that, because the 2011 Ohio Attorney General Opinion was issued to

answer the question whether an assistant county prosecutor can serve as a school board

member,[12] its language as to the role of an assistant county prosecutor is not applicable here.  To

the contrary, the delineation in the 2011 Ohio Attorney General Opinion of the role of an

assistant county prosecutor is instructive and persuasive.  Because the 2011 Ohio Attorney

General Opinion interprets the role of an assistant county prosecutor in Ohio in a manner

virtually identical to the role of an assistant county prosecutor in Michigan, the undersigned

concludes that the Sixth Circuit's decisions in *Monks* and *Simasko* can and should be applied to

this case.

---

[12] The 2011 Ohio Attorney General Opinion addressed whether "an assistant prosecuting attorney may serve simultaneously as a member of the board of education of a city school district located within the county in which he is employed as an assistant prosecuting attorney."  Ohio Attorney General Opinion 2011-041.

15

Even if *Monks* and *Simasko* were not determinative, Plaintiff's assistant county prosecutor position constitutes a category two position under *McCloud* because the position is one "to which a significant portion of the total discretionary authority available to category one position-holders [in this case county prosecutors] has been delegated . . . ." *McCloud*, 97 F.3d at 1557. This is so notwithstanding the fact that O.R.C. 309.06(A) does not detail the duties of assistant prosecutors.[13] Indeed, *McCloud* indicates that "[c]ategory two is constructed to recognize that it may be necessary to deny First Amendment protected not just to positions at the very top of any state administrative hierarchy, but in some cases to those occupying levels a bit further down the hierarchy" and "to capture those who would otherwise be category one policymakers, except the federal government, state, county, or municipality has chosen for whatever reason not to set out the responsibilities of such a position in a statute, ordinance, or regulation." 97 F.3d at 1557, FN 31. As noted above, in *Collins,* the Southern District of Ohio determined that the position of assistant county prosecutor in Ohio "requires both personal loyalty and a very high degree of trust and confidence." *Collins*, 2006 WL 2505928, *8 (relying on the *Pickering* balancing test as applied in *Bibb v. Newman*, 997 F.Supp. 1174 (S.D. Ind. 1998), which also involved the termination of an assistant county prosecutor). The court in *Collins* went on to hold that a prosecutor's interest in having assistant prosecutors of his

---

[13] Defendant also relies on another statute, O.R.C. § 124.11(A), which provides in pertinent part that assistants to county prosecuting attorneys are in the unclassified service. Plaintiff argues that the Defendant's reliance on that statute is misplaced because whether she was a member of the classified service is not a fact before the Court. Doc. 20, p. 11. The Court will not address O.R.C. § 124.11(A) because it is unnecessary to do so in order to decide the Motion. However, the Court notes that the Sixth Circuit has stated that any ambiguity about whether an employee is confidential/policymaking is to be construed in fact of the governmental defendant when the position is "unclassified or non-merit under state law." *McCloud*, 97 F.3d at 1557 (citing *Rice v. Ohio Dept. of Transp.*, 14 F.3d 1133, 1140 (6th Cir. 1994).

choosing in whom he can have trust and confidence outweighs an assistant prosecutor's First Amendment rights. *Id.*

Indeed, Plaintiff, in her September 14, 2009, memorandum, recognized that she viewed herself as the alter ego of Defendant when she stated, "The county has had the benefit of saving tens of thousands of dollars on _my_ watch." Doc. 14-3 (emphasis added). This statement was a tacit if not a clear acknowledgement by Plaintiff that, when she performed her duties, she was acting in Defendant's stead. This acknowledgement, coupled with the 2011 Ohio Attorney General Opinion regarding the role of assistant prosecutors and relevant case law, leads the undersigned to conclude that Plaintiff, as an assistant county prosecutor, fell within category two under *McCloud* and thus held a confidential/policymaking position.

For the reasons set forth herein, the second of the two *Elrod/Branti* exception requirements is met, i.e., Plaintiff was a confidential/policy making employee.

### d. Application of the *Pickering* balancing test.

Because Plaintiff held a confidential/policymaking position and her speech was related to political or policy views the *Elrod/Branti* exception applies and the *Pickering* balance therefore weighs in favor of the Defendant. *See Rose*, 291 F.3d at 921 ("where a confidential or policymaking public employee is discharged on the basis of speech related to his political or policy views, the *Pickering* balance favors the government as a matter of law.")

Even if the Court did not find the *Elrod/Branti* exception applicable to this case, the *Pickering* balance nevertheless would weigh in favor of Defendant. *See Collins*, 2006 WL 2505928, *8 (applying *Pickering* to an Ohio assistant county prosecutor position). Under the *Pickering* balancing test, "the interests of the employee, as a citizen, in commenting upon matters of public concern" are weighed against "the interest of the State, as an employer, in

17

promoting efficiency of the public services it performs through its employees." *Dambrot*, 55 F.3d at 1185 (quoting *Pickering*, 391 U.S. at 568). "The *Pickering* balance requires full consideration of the government's interest in the effective and efficient fulfillment of its responsibilities to the public." *Connick*, 461 U.S. at 150. In his communication to the Plaintiff, the Defendant stated, in part: "As my representative in the community, I expect you to act with discretion and professionalism at all times. We do not publicly allege illegal conduct against anyone without the filing of formal charges by Complaint or Indictment. The publication of such allegations without foundation or basis is contrary to my philosophy of operating this office in an ethical, professional manner." Doc. 14-4; Doc. 20-1. Plaintiff's interest in speaking about the "Ravenna 'Good Old Boys' corruption club" (Doc. 14-2) cannot be said to outweigh Defendant's governmental interest in having loyal assistants whom he could trust to operate in "an ethical, professional manner." Doc.14-4, Doc. 20-1.

Accordingly, for the reasons set forth herein, Defendant did not violate Plaintiff's First Amendment – Freedom of Speech rights.

### B. Qualified Immunity

Because Defendant did not violate Plaintiff's First Amendment-Freedom of Speech rights, it is unnecessary to address the issue of qualified immunity. However, as discussed *infra*, the Court has considered the defense of qualified immunity and determined that, even if Plaintiff could demonstrate a violation of her First Amendment – Freedom of Speech rights, Defendant is entitled to qualified immunity on that claim in his individual capacity.

Qualified immunity does not protect governmental entities, but can shield a governmental official from individual capacity liability. *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009). Generally, governmental officials performing discretionary functions are "shielded

18

from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "[Q]ualified immunity was designed to give 'ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Caudill v. City of Kenton*, 2012 WL 1621371, *3 (N.D. Ohio May 9, 2012) (quoting *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).  A plaintiff bears the burden to show that a defendant is not entitled to qualified immunity.  *Caudill,* 2012 WL 1621371 at *3.

To evaluate a claim of qualified immunity, courts apply a two-prong test.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  A court generally should first look at whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. at 201; *cf. Pearson v. Callahan*, 555 U.S. 223 (2009) (courts may use their discretion to determine which of the two *Saucier* prongs should be evaluated first).  If the answer to this first question is no, then the defendant is entitled to qualified immunity and it is not necessary for a court to continue in its analysis.  *Saucier*, 533 U.S. at 201.  If the answer to the first question is yes, then the court shall determine whether the constitutional right alleged to have been violated was clearly established.  *Id.*  To be a "clearly established" right, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Application of the doctrine of qualified immunity is a question of law.  *Thomas v. Whalen*, 51 F.3d 1285, 1289 (6th Cir. 1994).  *See also  Provience v. City of Detroit*, 2012 WL 1094326, * 4 (E.D. Mich. March 31, 2012)(citing *Jeffers v. Heavrin*,

10 F.3d 380 (6th Cir. 1993)( indicating that "reasonableness" in the context of a qualified immunity analysis is a question of law.")

Plaintiff has not satisfied her burden of establishing that Defendant is not entitled to qualified immunity.  Doc. 20, p. 6.   First, as discussed *supra*, Plaintiff cannot demonstrate that Defendant violated her First Amendment – Freedom of Speech rights.  Second, even if Plaintiff were able to establish a violation of her First Amendment – Freedom of Speech rights, she has presented no argument that would allow the Court to conclude that Defendant's conduct violated a right that was clearly established at the time in question.   As discussed, the Sixth Circuit on more than one occasion and the Southern District of Ohio in at least one case have concluded that an assistant county prosecutor was not entitled to First Amendment protection.  Even if Plaintiff had succeeded in convincing the Court that Defendant is not entitled to judgment on the pleadings because those cases are distinguishable or the law in the Sixth Circuit was not clearly developed on the issue, Defendant would be entitled to qualified immunity by virtue of the fact that the law was not fully developed.  *See Harlow*, 457 U.S. at 818.  A reasonable prosecutor could not say that Defendant's conduct was clearly unlawful in light of the law existing at the time of Defendant's action.  *Anderson,* 483 U.S. at 640 (indicating that the unlawfulness must be apparent in light of pre-existing law).

### IV. Conclusion

For the foregoing reasons, the undersigned recommends that Defendant's Partial Motion for Judgment on the Pleadings (Doc. 14) be **GRANTED**.

**Date: August 16, 2012**

**KATHLEEN B. BURKE**
**U.S. MAGISTRATE JUDGE**

20

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).