# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| TOMMIE JO MARSILIO, | ) | CASE NO. 5:11cv1974 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE SARA LIOI |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| VICTOR VIGLUICCI, | ) | ORDER |
| | ) | |
| Defendant. | ) | |

Before the Court is defendant's motion for partial judgment on the pleadings. (Doc. No. 14.) Plaintiff filed an opposition to the motion (Doc. No. 20), to which defendant replied (Doc. No. 21). Pursuant to the Court's January 25, 2010 order of reference (Doc. No. 6), the magistrate judge issued a report and recommendation ("R&R") (Doc. No. 29), recommending that the Court grant defendant's motion. Plaintiff filed objections to the R&R (Doc. No. 34) and, with leave of the Court, plaintiff supplemented her objections (Doc. No. 38). In conjunction with her objections, plaintiff also filed a motion to convert defendant's motion to a motion for summary judgment. (Doc. No. 39.) Defendant filed opposition briefs to plaintiff's objections (Doc. No. 49) and to plaintiff's motion to convert (Doc. No. 48).

For the reasons that follow, defendant's motion for partial judgment on the pleadings is **GRANTED**.

## I. BACKGROUND

The factual allegations in this case, as drawn from the plaintiff's complaint and from the documents referred to therein, are largely undisputed and are outlined thoroughly within the magistrate judge's R&R. Plaintiff does not object to the magistrate judge's recitation of the factual allegations, but only to her analysis thereof and her legal conclusions. Accordingly, the

Court will **ADOPT** the factual and procedural background set forth in the R&R (Doc. No. 29 at 162-64) without alteration or addition. In order to provide context for the discussion herein, however, the Court will briefly relate the basic factual background and procedural events that give rise to the Court's ruling.

Defendant seeks judgment on the pleadings as to Count I of the complaint, which alleges that defendant, who was the elected Portage County Prosecutor, violated 42 U.S.C. § 1983 when he terminated plaintiff from her position as an assistant county prosecutor for exercising her First Amendment right to freedom of speech.[1] Specifically, on September 14, 2009, defendant told plaintiff, then a candidate for the elected public office of county municipal judge, to stop circulation of a proposed campaign advertisement that she had distributed among her campaign committee and her political party's central committee, and to apologize to her political opponent or face termination. The advertisement stated, "The 'Good Old Boys' Say elect Kevin Poland . . . Real People Say Elect Tommie Jo Marsilio . . . She is **not** a member of the **Ravenna 'Good Old Boys' corruption club**." (Doc. No. 14-2) (emphasis and ellipses in original).

On September 14, 2009, plaintiff responded to defendant by memo, advising him that the speech at issue was protected political speech. (Doc. No. 14-3.) The memo indicated that plaintiff would cease distribution of the advertisement, but that she would not apologize to Kevin Poland because she had done nothing wrong. (*Id.*)

---

[1] The complaint also alleges that defendant's conduct violated plaintiff's equal protection rights guaranteed by the Fourteenth Amendment (Count II) and constituted sex discrimination in violation of state law (Count III), on the grounds that male employees purportedly made similar comments but were not disciplined by defendant and because defendant purportedly paid his female employees less than comparable male employees. Defendant's present motion did not seek judgment on these claims.

2

On September 15, 2009, defendant replied to plaintiff by letter, reiterating his demand that she no longer circulate the proposed advertisement and that she apologize to her opponent or face termination at the end of the workweek. (Doc. No. 14-4.) When plaintiff did not comply with defendant's directions, he terminated her employment on September 18, 2009.

Defendant moves for partial judgment on the pleadings as to Count I on the grounds that plaintiff has not asserted a cognizable First Amendment claim. He also asserts that he is entitled to qualified immunity. In support of his motion, defendant submitted plaintiff's proposed advertisement, as well as the correspondence between himself and plaintiff. He asserts that the Court can properly consider these documents as part of the pleadings without converting his motion to one for summary judgment because plaintiff referred to those documents in her complaint and they are central to her claims. (Doc. No. 14-1 at 90.)

In opposition, plaintiff argues that issues of fact exist that preclude partial judgment for defendant on the pleadings. Further, plaintiff indicates in her opposition brief that she does not challenge defendant's assertion that the Court can consider the attachments to defendant's motion without converting his motion to one for summary judgment. (Doc. No. 20 at 118.) Indeed, she attached to her opposition brief an additional memo that she purportedly sent to defendant in response to his September 15, 2009 letter of termination. (Doc. No. 20-2.)

Upon consideration of the pleadings and the documents submitted by the parties, the R&R recommends that the Court grant defendant's motion because, under well-established case law, plaintiff's former position as an assistant county prosecutor was a confidential/policymaking position and, therefore, she did not enjoy protection from being terminated for speech related to her political or policy views. (Doc. No. 29 at 161-62.) Further,

3

the magistrate judge found that defendant is entitled to qualified immunity in his individual capacity. Plaintiff raises several objections to the R&R.

## II.    DISCUSSION

### A.  Standard of Review

Under Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." After review, the District Judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.; see also* 28 U.S.C. § 636(b)(1)(C).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 44, 47 (1957). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556, n. 3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

Under Rule 12(c), a party may move for judgment on the pleadings any time after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

4

*E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The district court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio,* 193 F.3d 389, 400 (6th Cir.1999) (citing *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987)). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n,* 946 F.2d 1233, 1235 (6th Cir. 1991) (citation omitted).

## B.  Review of Matters Outside the Pleadings

Despite her previous agreement that the Court could properly consider the parties' attachments without converting defendant's motion to one for summary judgment, plaintiff now objects to the magistrate judge's consideration of those documents and contends that the magistrate judge should have converted defendant's motion. To this end, plaintiff has also filed a motion to convert defendant's motion to one for summary judgment, urging that the Court's resolution of the issues presented in defendant's motion requires reliance upon matters outside

the pleadings and evidence uncovered to date in discovery, but not previously presented to the magistrate judge.

Ordinarily, "[m]atters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss," *Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin,* 866 F.2d 172, 175 (6th Cir. 1989)), and a court considering such matters typically will convert a Rule 12 motion to a motion for summary judgment. Fed. R. Civ. P. 12(d). However, the Sixth Circuit has adopted the Seventh Circuit's view that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim." *Weiner,* 108 F.3d at 88 (quoting *Venture Assoc. v. Zenith Data Sys.,* 987 F.2d 429, 431 (7th Cir. 1993)).

With regard to the documents attached to defendant's motion, i.e., the advertisement at issue and the letters dated September 14, 2009 and September 15, 2009, the Court finds that the magistrate judge's consideration thereof was proper. It cannot reasonably be disputed that each of these documents were referred to in plaintiff's complaint, Compl. ¶¶ 1, 6-13, 20, and are central to her claims and, therefore, are considered part of the pleadings. *Id.*; *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (advertising copy referred to in complaint alleging claim of false advertisement and attached to defendant's motion to dismiss may be considered without converting Rule 12(b)(6) motion into one for summary judgment); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997) (letter referred to in complaint may be considered on Rule 12(b)(6) motion without triggering conversion to summary judgment); *Samara v. United States*, 129 F.2d 594, 597 (2d Cir.), *cert. denied*, 317 U.S. 686 (1942) (same). Accordingly, the Court accepts the

magistrate judge's recommendation that the Court may properly consider these three documents in ruling on defendant's Rule 12(c) motion.

The same cannot be said, however, of the magistrate judge's consideration of plaintiff's September 18, 2009 letter to defendant, which was not referred to in the complaint and, as a result, may not be considered by the Court in ruling on defendant's motion for judgment on the pleadings. *Weiner*, 108 F.3d at 88. Accordingly, the Court rejects the magistrate judge's recommendation that the Court consider this letter in ruling on defendant's Rule 12(c) motion.

Plaintiff does not appear to dispute the magistrate judge's consideration of any of the documents referenced in her complaint (Doc. No. 39 at 258), but instead argues that these "documents are not the entire spectrum of evidence in this case that this Court *must* consider when assessing the merits of defendant's motion." (Doc. No. 39 at 258) (emphasis added). To this end, plaintiff urges the Court to consider a newspaper article and witness deposition testimony, which she contends raise genuine issues of material fact. (Doc. Nos. 39-2, 40, 41.)

It is solely within the Court's discretion, however, to either consider these matters and convert the motion to one for summary judgment or to exclude the extra-pleading materials and apply the standard set forth in Rule 12(c). *See Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000); *see also Batt v. United States,* 976 F. Supp. 1095, 1096-97 (N.D. Ohio 1997) ("The decision to exclude material outside the pleadings is entirely within the discretion of the trial court.").

Here, the Court will exclude the extra-pleading matters offered by plaintiff and treat defendant's motion as one under Rule 12(c) for several reasons. First, given the status of the

7

litigation *at the time* defendant filed his motion, converting a Rule 12(c) motion into one for summary judgment would have been premature. Little or no discovery had taken place to allow the parties to argue, and the magistrate judge to determine, whether a genuine issue of material fact exists. *See McFarland v. Air Eng'g Metal Trades Council*, No. 4:05-CV-108, 2007 WL 1795669, at *1 (E.D. Tenn. June 19, 2007) (citations omitted). Moreover, plaintiff offers no support for her assertion that Rule 12(d) contemplates conversion of a Rule 12 motion simply because evidence exists beyond that properly attached to the pleadings or incorporated therein by reference. To the contrary, the purpose of a motion under Rule 12(c) is to test the sufficiency of the complaint, without requiring the parties to engage in expensive and time-consuming discovery and without reaching the merits of the case. *See id.; see also, Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 831 (N.D. Ohio 2010) ("The purpose of a motion under either rule is to test the sufficiency of the complaint—not to decide the merits of the case."); *Glasstetter v. Rehab. Servs. Comm'n*, No. 2:07-CV-125, 2008 WL 886137, at *4 (S.D. Ohio Mar. 28, 2008).

Finally, as discussed more fully below, the arguments set forth in defendant's motion are legal, rather than factual, in nature. It is plaintiff who attempts to use materials outside the pleadings to convert defendant's motion to one for summary judgment. If defendant had wished to file a motion under Rule 56, he would have done so. Instead, defendant chose to proceed under Rule 12(c), and objects to plaintiff's extra-pleading evidence. "Fairness dictates that, absent some persuasive justification, the moving party should be able to obtain the benefit of the particular rule he or she has chosen to move under." *Wilson v. Karnes*, No. 2:06-CV-392,

2007 WL 4207154, at *3 (S.D. Ohio Nov. 26, 2007). Plaintiff offers no such persuasive justification.

Accordingly, for the foregoing reasons, the Court denies plaintiff's motion to convert defendant's Rule 12(c) motion into a motion for summary judgment under Rule 56 and overrules her objection that the magistrate judge should have recommended conversion of defendant's motion. Consequently, the Court will not consider the following when ruling on defendant's motion for partial judgment on the pleadings: (1) the September 18, 2009 letter offered by plaintiff in opposition to defendant's motion for judgment on the pleadings; and (2) the newspaper article and deposition testimony offered by plaintiff in her objections to the R&R.

### C. First Amendment Retaliation Claim

Count I of plaintiff's complaint alleges a claim for retaliatory discharge in violation of 42 U.S.C. § 1983. To establish a prima facie case of retaliation under § 1983, plaintiff must demonstrate that she was engaged in a constitutionally protected activity; that she was subjected to adverse action or deprived of some benefit; and that the protected activity was a substantial or motivating factor in the adverse action. *Farhat v. Jopke*, 370 F.3d 580, 588 (6th Cir. 2004) (citation omitted). The magistrate judge concluded that plaintiff failed to satisfy the first prong of this three-part test and, therefore, analysis of the remaining two prongs was unnecessary. For the reasons that follow, the Court agrees.

Plaintiff asserts that she was terminated for engaging in constitutionally protected speech (or for refusing to speak). In order for a public employee to make out a claim for retaliatory discharge based on protected speech, she must satisfy three elements, as follows:

> 1) the speech involved a matter of public concern; . . . 2) the interest of the
> employee as a citizen, in commenting upon matters of public concern, outweighs

the employer's interest in promoting the efficiency of the public services it performs through its employees; . . . and 3) the speech was a substantial or motivating factor in the denial of the benefit that was sought.

*Perry v. McGinnis,* 209 F.3d 597, 604 (6th Cir. 2000) (internal citations and quotations omitted); *see also Connick v. Myers,* 461 U.S. 138, 143 (1983); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977). Plaintiff cannot satisfy this test.

  1. <u>Matter of Public Concern</u>

   Whether the speech at issue is a matter of public concern is a question of law for the Court. *Hughes v. Region VII Area Agency on Aging,* 542 F.3d 169, 180 (6th Cir. 2008). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147–48. Defendant concedes, only for purposes of his motion for judgment on the pleadings, that plaintiff engaged in speech protected by the First Amendment. Accordingly, the magistrate judge concluded that it was not necessary for the Court to engage in an analysis regarding this prong of the *Connick* test and determined that plaintiff's speech constituted speech on a matter of public concern. Plaintiff has not objected to this portion of the R&R and agrees that this prong of the *Connick* test is not at issue. (Doc. No. 38 at 241.) Consequently, the Court accepts this portion of the R&R.

  2. <u>The *Pickering* Balancing Test and the *Elrod/Branti* Exception</u>

   Because the speech at issue in this case relates to a matter of public concern, the Court must next employ the balancing test outlined in *Pickering v. Board Of Education*, 391 U.S. 563 (1968), to determine if plaintiff's free speech interests outweigh the efficiency interests of

her government employer. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006) (citation omitted).

The Sixth Circuit, however, "employs a different test when a claim is brought by an employee who held a policymaking or confidential position." *Silberstein v. City of Dayton*, 440 F.3d 306, 319 (6th Cir. 2006) (citing *Rose v. Stephens*, 291 F.3d 917, 922 (6th Cir. 2002)). In *Rose*, the Sixth Circuit held "that, as a matter of law, the . . . *Pickering* test favors the governmental employer 'where a confidential or policymaking public employee is discharged on the basis of speech related to [her] political or policy views . . . .'" *Latham v. Office of Attorney Gen. of State of Ohio*, 395 F.3d 261, 265 (6th Cir. 2005) (quoting *Rose*, 291 F.3d at 921). This holding is an extension of the *Elrod/Branti* line of cases, in which the Supreme Court recognized that, although patronage dismissals ordinarily are unconstitutional, a public employer may terminate a public employee in a policymaking or confidential position solely because of her political affiliation without violating the First Amendment. *Rose*, 291 F.3d at 921 (6th Cir. 2002) (citing *Elrod v. Burns*, 427 U.S. 347, 367 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980)).

The R&R recommends that judgment on the pleadings be granted in favor of defendant because plaintiff's political speech was not constitutionally protected as she was a confidential/policymaking employee and, therefore, her First Amendment rights were subordinated to defendant's interest as a matter of law under the *Elrod/Branti/Rose* exception.

Plaintiff raises the following objections to the magistrate judge's analysis of her First Amendment retaliation claim:

1. The magistrate judge engaged in fact-finding impermissible for a motion for judgment on the pleadings;

11

2.  The magistrate judge misapplied the law applicable to speech compelled by an elected government official of his employee, as the speech required in this case was not job-related nor related to the policies or practices of the Portage County Prosecutor's Office; and

3.  The magistrate judge ignored the fact that the compelled speech in this case was adverse to the interests of the Plaintiff, was not job-related and would have caused her injury.

(Doc. No. 34.) She asserts there is no evidence that an apology to Kevin Poland would implicate or involve the prosecutor's office and, in fact, was totally unrelated to her employment and, therefore, the balance under *Pickering* weighs in her favor.

Plaintiff's supplement to her objections contends that both the defendant and the magistrate judge focused on the incorrect facts and law and neither addressed nor considered that the compelled apology would have been contrary and harmful to her interests and to her personal beliefs. Plaintiff argues that her political affiliation, association, or loyalty "are simply inapposite" to the determination of her First Amendment claim. (Doc. No. 38 at 243.)

Contrary to plaintiff's assertions, however, free speech claims and association claims are not subject to different First Amendment analyses. Indeed, the Sixth Circuit has held that "no logical reason exists for distinguishing between speech and association in applying *Connick* to first amendment claims[.]" *Monks v. Marlinga*, 923 F.2d 423, 425 (6th Cir. 1991) (citation omitted); *see also, Scarbrough*, 470 F.3d at 260 (noting "the analytic tools for adjudicating First Amendment retaliation claims" are the same whether the plaintiff's claim arises under the free speech clause or the free association clause). Moreover, whether plaintiff was terminated in retaliation for speaking or for failing to speak when compelled to do so, the analysis of her claim remains the same. *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,  487 U.S. 781, 796-97 (1998) (noting the difference between compelled speech and compelled silence is a

12

"difference . . . without constitutional significance, for the First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what not to say."). Thus, to the extent that plaintiff objects that the *Elrod/Branti/Rose* line of cases is inapplicable on these grounds, her objections are without merit and are overruled. *Rose*, 291 F. 3d at 921 (*Elrod/Branti* rule applies whether employee was discharged because of actual speech related his political or policy views, rather than for political affiliation alone); *see also, Simasko v. Cnty. of St. Clair*, 417 F.3d 559 562-63 (6th Cir. 2005) (no constitutional violation under *Elrod/Branti* exception where public employer terminated employee in policymaking or confidential position for his refusal to support supervisor's campaign for an elected judgeship).

Turning to the magistrate judge's application of the *Elrod/Branti* exception to this case, the R&R addressed two inquiries: (1) whether plaintiff occupied a policymaking or confidential position; and (2) whether the speech (or compelled speech) at issue addressed matters related to plaintiff's political or policy views.

### a. Policymaking or Confidential Position

In determining whether the 'policymaking or confidential' requirement has been met, "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518. The Sixth Circuit has articulated four categories of public employees who will always fall within the *Elrod/Branti* policymaking or confidential employees exception:

> (1) positions specifically named in relevant law to which discretionary authority in carrying out law enforcement or political policy is granted; (2) positions to which a significant amount of category-one authority has been delegated, or positions not specifically named by law but inherently possessing category-one

type authority; (3) confidential advisors to category-one position-holders; or (4) positions that are part of a group of positions filled by balancing out political party representation or by balancing out selections made by different government bodies.

*Silberstein*, 440 F.3d at 319 (citing *McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir. 1996)); *Rose*, 291 F.3d at 924). The "relevant focus of analysis is the inherent duties of the position in question, not the work actually performed by the person who happens to occupy the office." *Monks*, 923 F.2d at 425 (citation omitted). "An employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position." *Elrod*, 427 U.S. at 368.

The R&R found, as a matter of law, that plaintiff's position as an assistant county prosecutor in Ohio falls within the *Elrod/Branti* exception. In doing so, the magistrate judge relied on two Sixth Circuit cases, *Monks* and *Simasko*, holding that assistant county prosecutors in Michigan fall within the exception in light of a state statute's imposition of "the inherent policy-making responsibilities of the prosecutor on the assistant prosecutor[.]" *Monks*, 923 F.2d at 426; *Simasko*, 417 F.3d at 563. The magistrate judge concluded that an Ohio statute authorizing county prosecutors to appoint assistants, Ohio Rev. Code § 309.06, as well as Ohio Attorney General Opinions flushing out the assistant county prosecutor's role, defined that role in a similarly broad manner. (Doc. No. 29 at 174-75.) She also noted that, even if *Simasko* and *Monks* were not determinative, plaintiff's position would constitute a category two position under *McCloud*. In reaching this conclusion, the magistrate judge relied on a Southern District of Ohio case holding that an elected Ohio county prosecutor's interest in having assistant prosecutors "of his choosing, in whom he presumably could repose both trust and confidence,

14

outweighed" his assistant's First Amendment right to speak on matters of public concern. *Collins v. Allen*, No.1:04-CV-572, 2006 WL 2505928, at *8-9 (S.D. Ohio Aug. 29, 2006).[2]

Plaintiff objects to this conclusion arguing, "there is no evidence that [she] was a 'policy-making' employee[,]" and further, that "[s]he was not an elected official." (Doc. No. 38 at 243.) But there is simply no requirement that plaintiff's position *itself* be an elected one to fit the 'policy-making' or 'confidential' employee exception. Further, the relevant focus of the inquiry is not on the work *actually* performed by plaintiff, but on the inherent duties of her position. *Monks*, 923 F.2d at 425 (citation omitted). Where those duties can be defined by operation of state law, it is not necessary to consider evidence regarding plaintiff's job as it was actually performed by plaintiff. *Id.* at 425.

Plaintiff's position is a *McCloud* category two position as a matter of law. Under Ohio law, "an assistant prosecuting attorney is a statutory agent of the elected prosecutor[] . . . and is authorized to act on the prosecutor's behalf as one who is 'necessary for the proper performance of the duties of [the] office . . . .'" *Joyce v. Godale*, No. 2006-G-2692, 2007 WL 313938, at *4 (Ohio Ct. App. Feb. 2, 2007) (quoting Ohio Rev. Code § 309.06(A)). Further, "R.C. 309.06(A) does not appear to place any limitation upon the ability of a prosecuting attorney to delegate his work to other attorneys." *State ex rel. Sartini v. Trumbull Twp. Volunteer Fire Dept.*, 163 Ohio App. 3d 603, 607 (Ohio Ct. App. 2005). The elected county prosecutor's broad authority to delegate his responsibilities to assistant prosecutors in his employ supports the

---

[2] The magistrate judge also relied upon a purported acknowledgment by plaintiff that she performed as defendant's alter ego when she stated in her memo that the county had saved "tens of thousands of dollars on [her] watch." (Doc. No. 29 at 177 (quoting Doc. 14-3).) Whether or not plaintiff *actually* performed in defendant's stead, however, is irrelevant to the policy-making/confidential employee inquiry. The "relevant focus of analysis is the *inherent* duties of the position in question, not the work *actually* performed by the person who happens to occupy the office[.]" *Monks*, 923 F.2d at 425 (citation omitted) (emphasis added).

15

magistrate judge's conclusion that the job of an assistant prosecutor is a category two policy-making position under *McCloud. Monks*, 923 F.2d at 426 ("Because Michigan law statutorily imposes the inherent policy-making responsibilities of the prosecutor on the assistant prosecutor, we hold that the job of assistant prosecutor is a policy-making position."); *see also Latham*, 395 F.3d at 269 ("where the inherent duties of the employee are broad and limited primarily by the discretion of the policymaker, it is likely that the employee is herself a confidential or policymaking employee under *Elrod.*"); *Roupe v. Bay Cnty.*, 268 F. Supp. 2d 825, 832 (E.D. Mich. 2003) (deputy register of deed's statutorily imposed "responsibility for standing in the shoes of the Register [of Deeds] during her absence places her in Category Two under *McCloud* and subjects her to dismissal for perceived disloyalty."). Accordingly, the magistrate judge did not err in concluding that plaintiff's assistant county prosecutor position constituted a policy-making/confidential position based on that position's inherent duties, and plaintiff's objection to this conclusion is overruled.

### b. *Speech Related to Political or Policy Views*

Next, the Court must determine whether plaintiff's speech (or refusal to speak) which provoked her termination was "related to [her] political or policy views." *Rose*, 291 F.3d at 921 (the exception applies "in situations where the employee's speech relates to either his political affiliation or substantive policy."). "[T]he *Elrod/Branti* exception has been interpreted to permit a hiring authority to terminate a policymaking or confidential employee based on 'political differences of any kind[,]'" *Simasko*, 417 F.3d at 562 (quoting *Williams v. City of River Rouge*, 909 F.2d 151, 153 n. 4 (6th Cir. 1990)), "even if that employee never evidences a policy disagreement with his employer." *Id.* at 564 (citations omitted). Thus, in *Simasko*, the Sixth

16

Circuit held that an assistant county prosecutor's decision not to support the chief prosecutor's campaign for a local "judgeship election was sufficient to implicate loyalty concerns that could have caused [the county attorney] to lose confidence in [the assistant]." *Id.* at 563. The court observed, "the mere fact that an employee is affiliated with an opposing political party, however quietly, can cause the employer not to trust the employee to implement fully the employer's practices." *Id.* (citing *Latham*, 395 F.3d at 266-67).

The R&R notes that the parties agree that plaintiff's speech, which related to a judicial election, concerned plaintiff's political views. Indeed, plaintiff's complaint states as much. Plaintiff contended in her opposition brief, however, that in order for *Rose* to apply, the speech at issue must be job-related. The magistrate judge rejected this contention, finding *Rose* and *Simasko* controlling and concluding that plaintiff's refusal to apologize to her political opponent was factually indistinguishable from the plaintiff's refusal in *Simasko* to support the chief prosecutor's campaign for judgeship, which also did not specifically involve job-related speech. (Doc. No. 29 at 172-73.) In either case, the plaintiff's speech implicated loyalty concerns (i.e., the plaintiff's political or substantive policy views) that could have caused the employer to lose confidence in the employee. Accordingly, the magistrate judge concluded that this prong of the *Elrod/Branti* exception is met.

Plaintiff objects that the magistrate judge erred in applying *Rose* and *Simasko* to her case because: (1) her speech was unpublished; (2) her speech did not implicate or address her employment; and (3) the magistrate judge failed to consider that the compelled apology would harm plaintiff's personal and political interests, which harm was not outweighed by defendant's

17

interest in promoting efficiency in his office.[3] (Doc. No. 38 at 243-46.) The Court will address each of these objections in turn.

First, plaintiff argues that speech must be public for the presumption in favor of the government to apply, and that her speech (i.e., the proposed political advertisement) was not made public, but rather was circulated only among her campaign and party leaders. Therefore, she asserts, the presumption of *Rose* should not apply here. The Sixth Circuit, however, has held that the fact that an employee's speech was not made public does not prevent the application of the *Rose* presumption in favor of the government. *Latham*, 395 F.3d at 265-66 (intra-office nature of speech did not affect the application of *Rose*). "In fact . . . the speech at issue in *Rose* was also never made 'public.' Rose only sent his memorandum to his superior . . . and his superior's superior . . . ." *Id.* at 265-66. The Court's focus in applying *Rose* is "on how the speech . . . affect[s] the employer's ability to maintain a working relationship with his or her employees, rather than whether the speech was 'public' or intra-office." *Id.* at 266 (citing *Rose*, 291 F.3d at 923). Accordingly, any distinction between the public nature of plaintiff's speech and that of the speech in *Rose* does not affect the application of *Rose* to this case. *Id.*

Next, plaintiff argues that the application of the *Rose* presumption in favor of the government is limited to speech on job-related issues and that her refusal to apologize to her

---

[3] Plaintiff also implies that the Court cannot rely on *Simasko* because the issue on appeal in that case was qualified immunity. She contends that, since she intends to file a stipulation of dismissal as to her claims against defendant in his individual capacity, any immunity issues are moot. Irrespective of the procedural posture of *Simasko*, however, the legal issues therein are identical to the ones the Court faces in this case. As the court recognized in *Simasko*, the first step for the courts in any qualified immunity analysis is determining whether, based upon the applicable law, the facts viewed in light most favorable to plaintiff show that a constitutional violation has occurred." *Simasko v. Cnty. of St. Clair*, 471 F.3d 559, 562 (6th Cir. 2005). Similarly, here, on a motion for judgment on the pleadings, the Court seeks to answer the indistinguishable question of "whether the complaint contains sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The fact that *Simasko* involved addressing this question within the framework of the qualified immunity analysis is of no consequence to the applicability of the Sixth Circuit's holding therein to this case.

political opponent does not relate to anything concerning her employer. She contends that her case is less like *Simasko* and more like *Scarbrough*, a case dealing with a school district's refusal to renew its superintendent's contract when he agreed to speak about his religious beliefs at a church with a predominantly homosexual congregation. Plaintiff contends that, as in *Scarbrough*, her speech or refusal to speak was on a matter of public concern that did not relate to anything concerning her employer. 470 F.3d at 258-59. Consequently, she contends the presumption of *Rose* does not apply here. In support, plaintiff cites the following passage in *Rose*:

> In short, the rule we adopt today simply recognizes the fact that it is insubordination for an employee whose position requires loyalty *to speak on job-related issues* in a manner contrary to the position of his employer, and, as the Supreme Court has recognized, 'employees may always be discharged for good cause, such as insubordination . . . .' *Elrod*, 427 U.S. at 366, 96 S. Ct. 2673.

*Rose*, 291 F.3d at 923 (emphasis added). Plaintiff asserts this language limits the exception in *Rose* to only speech on matters implicating or addressing her employment.

In the case of a policymaking/confidential employee, however, the employee's political or policy views *are* job-related issues because the employee's political loyalty to his or her employer "is an essential requirement of the efficient functioning of the workplace." *Rose*, 291 F.3d at 923. The determination for the Court, therefore, is not whether the content of plaintiff's speech necessarily addresses plaintiff's employment conditions or concerns her employer directly, but whether her speech could lead the employer not to trust the employee to *loyally* implement the employer's practices. *Latham*, 395 F.3d at 266-67; *Rose*, 291 F.3d. at 922 ("This rule flows logically from the Supreme Court's recognition in the political patronage cases that the government has a legitimate interest in securing employees who will loyally implement its policies."). "When [a policymaking/confidential employee] speaks in a manner that

19

undermines the trust and confidence that are central to his position, the balance definitively tips in the government's favor because an overt act of disloyalty necessarily causes significant disruption in the working relationship between a confidential employee and his superiors." *Id.* at 923 (citing *Pickering*, 391 U.S. at 570 n. 3.).

Here, plaintiff's refusal to apologize to her political opponent is no less job-related than Simasko's refusal to support his superior's campaign for judgeship. In both cases, the employee was expected to be "loyal" to a particular party and/or "loyally implement" government policies. The speech or refusal to speak in both instances unquestionably related to the employee's politics and thereby implicated the employer's political loyalty concerns. Unlike an employee who engages in speech that very plainly does not implicate loyalty concerns and bears no relationship to her employer's interests in administering his office, such as the expression of personal religious beliefs in *Scarbrough*, *supra*, an assistant county prosecutor's allegation of "corruption," a legally significant term, very plainly implicates her loyalty to the elected officeholder whom she serves and relates to the performance of her duties  as a prosecutor.

Lastly, plaintiff objects that the magistrate judge failed to recognize and weigh the effect of the demanded apology on plaintiff's personal beliefs and political interests. However, the magistrate judge need not have relied on the *Pickering* balance at all in this case because where the presumption in favor of the government outlined in *Rose* applies, as it does here, "an individualized balancing of interests is unnecessary." *Rose*, 291 F. 3d at 923. Consequently, the R&R's application of the *Pickering* balance test in this case was unnecessary.

In conclusion, defendant is entitled to judgment as a matter of law on plaintiff's retaliation claim because plaintiff cannot show that she engaged in constitutionally protected speech. Plaintiff occupied a position for which political loyalty was itself a legitimate criterion and plaintiff's speech (or refusal to speak) related to her political or policy views, therefore a presumption arises that her speech adversely affected a central aspect of her working relationship with defendant, and defendant's discharge of plaintiff did not violate the Constitution. Accordingly, plaintiff's objections are overruled.

### D.  Qualified Immunity

Plaintiff contends that the issue of immunity is moot because she intends to file a stipulated notice of dismissal as to her claims against defendant in his individual capacity. Counsel for defendant indicates that consent to the dismissal was provided by email. (*See* Doc. No. 68 at 1298). As of the writing of this opinion, however, no such stipulation has been filed. Accordingly, plaintiff's claims against defendant in his individual capacity have not been dismissed and the Court will therefore address defendant's qualified immunity arguments.

"In order to prevail in a § 1983 action for civil damages from a government official performing discretionary functions, the defense of qualified immunity that our cases have recognized requires that the official be shown to have violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Conn v. Gabbert,* 526 U.S. 286, 290 (1999) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Qualified immunity analysis proceeds in two stages. First, the Court must consider the "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201 (2001). If

21

that question is answered in the affirmative, the Court next asks "whether the right was clearly established . . . in light of the specific context of the case . . . ." *Id.* "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Feathers v. Aey,* 319 F.3d 843, 848 (6th Cir. 2003) (internal quotation omitted). When a defendant raises a qualified immunity defense, the burden is on the plaintiff to prove that defendant is not shielded by qualified immunity. *Silberstein,* 440 F.3d at 311.

The Court accepts the conclusion of the magistrate judge that even if plaintiff could demonstrate a violation of her First Amendment rights, defendant is entitled to qualified immunity on that claim in his individual capacity. The magistrate judge concluded that plaintiff failed to present any argument that would allow the Court to conclude that defendant's conduct violated a right that was clearly established at the time in question. (Doc. No. 29 at 180.) Indeed, as the R&R indicated, defendant is entitled to qualified immunity by virtue of the fact that the law was not fully developed such that a reasonable prosecutor could not say that his conduct was clearly unlawful under these circumstances. *See Harlow*, 457 U.S. at 818; *Feathers*, 319 F.3d at 848.

Plaintiff objects that "[i]t was clear under established law that no elected public official could require an employee to engage in speech that was not job-related and that was harmful to that employee's interests and therefore Defendant is not immune from liability . . . ." (Doc. No. 34 at 212.) Nevertheless, plaintiff's supplemental brief in support of her objections does not offer any analysis, argument, or support for this proposition. Therefore, her objection is overruled. *See Miller v. Curie*, 50 F.3d 373, 380 (6th Cir. 1995) ("objections must be clear

22

enough to enable the district court to discern those issues that are dispositive and contentious.")
(citation omitted).

III.    CONCLUSION

For the foregoing reasons, plaintiff's motion to convert defendant's motion for partial judgment on the pleadings into one for summary judgment is **DENIED**. Further, with the exception of the magistrate judge's consideration of plaintiff's September 18, 2009 letter, plaintiff's objections are **OVERRULED**, and the conclusion of the R&R is **ACCEPTED.** Defendant's motion for partial judgment on the pleadings is **GRANTED** and Count I is hereby **DISMISSED**.

IT IS SO ORDERED.

Dated: February 14, 2013                    _____
                                            **HONORABLE SARA LIOI**
                                            **UNITED STATES DISTRICT JUDGE**