# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

TOMMIE JO MARSILIO,⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀CASE NO. 5:11cv1974
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀JUDGE SARA LIOI
vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀MEMORANDUM OPINION AND
VICTOR VIGLUICCI,⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀ORDER
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀Defendant.⠀⠀)

⠀⠀⠀⠀⠀⠀Before the Court is defendant's motion for summary judgment (Doc. No. 51), plaintiff's opposition thereto (Doc. No. 62), and defendant's reply (Doc. No. 68). For the reasons that follow, defendant's motion for summary judgment as to Count I is **DENIED as MOOT** and the remainder of the motion is **GRANTED**.[1]

## I.⠀⠀⠀⠀BACKGROUND

### A.⠀Procedural History

⠀⠀⠀⠀⠀⠀On September 19, 2011, plaintiff Tommie Jo Marsilio ("plaintiff" or "Marsilio"), a former Portage County assistant prosecutor and former candidate for municipal judge, initiated this action against Victor Vigluicci ("Vigluicci"), the Portage County Prosecutor, alleging that

---

[1] At the time the present motion was filed, defendant's earlier filed motion for partial judgment on the pleadings was still pending and, therefore, defendant incorporated the arguments raised therein within the brief in support of summary judgment. Because the Court has since granted defendant's motion for partial judgment on the pleadings with regard to Count I of the complaint, defendant's present arguments in favor of summary judgment on that claim are MOOT.

defendant[2] unlawfully terminated her for refusing to withdraw a political advertisement, "while allowing men who expressed substantially the same ideas to remain employed[.]" (Compl., Doc. No. 1 at 1.) The complaint also alleges pay discrimination, asserting that Vigluicci's "office paid plaintiff less than male employees with the same or lesser responsibilities and its female employees are paid less than their male counterparts generally." (*Id*.) The complaint asserts claims pursuant to 42 U.S.C. § 1983 for violation of plaintiff's constitutional rights guaranteed by the First and Fourteenth Amendments, as well as a claim for sex discrimination in violation of state law. (*Id*. at 4-5.) Plaintiff seeks back pay, compensatory damages, punitive damages, and attorney fees and costs.

On March 30, 2012, defendant moved for partial judgment on the pleadings as to plaintiff's § 1983 claim for First Amendment retaliation (Count I). (Doc. No. 14.) On August 16, 2012, the magistrate judge issued a Report and Recommendation recommending that defendant's motion be granted. (Doc. No. 29.) Plaintiff subsequently filed objections (Doc. No. 34) and a motion to convert defendant's motion into one for summary judgment (Doc. No. 39). On September 21, 2012, while the foregoing motions and objections were still pending, defendant filed the instant motion for summary judgment. (Doc. No. 51.)

On February 14, 2013, the Court denied plaintiff's motion to convert defendant's motion for partial judgment on the pleadings, overruled plaintiff's objections, and adopted the magistrate judge's recommendation, granting defendant's motion for partial judgment on the pleadings and dismissing Count I of the complaint. (Doc. No. 75.) Accordingly, the Court will

---

[2] While Vigluicci was named as the defendant in this action, Vigluicci—to the extent he was sued in his official capacity—merely stands in the stead of Portage County, the true defendant. Therefore, all references to "defendant" in this Memorandum Opinion and Order shall refer to Portage County. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *see* the Court's discussion of individual and official capacity suits under Ohio law, *infra*.

confine its recitation of the evidence in the record to only those facts that are pertinent to plaintiff's remaining § 1983 equal protection claims (Count II) and state law gender discrimination claim under Ohio Rev. Code §§ 4112.02 and 4112.99 (Count III).

## B.  The Record Before the Court

### 1.  *Structure and Work Conditions of the County Prosecutor's Office*

In 1994, Vigluicci was appointed as the Portage County Prosecuting Attorney. (Doc. No. 51-2 [Vigluicci Aff.] ¶ 2.) The Portage County Prosecutor's Office is divided into three divisions: civil, criminal and appellate. (Doc. No. 63 [Vigluicci Dep.] at 900.) The criminal division handles the prosecution of criminal matters under Ohio Rev. Code Chapters 29 and 45, while the civil division handles civil issues presented by the various agencies and departments of the county. (*Id.* at 902; Doc. No. 40 [Brode Dep.] at 272.) During the pertinent period, Francis Ricciardi was the criminal division chief and Denise Smith was the civil division chief. (Doc. No. 43 [Marsilio Dep.] at 341; Doc. No. 63 at 924.)

From July 30, 2007 until September 18, 2009, plaintiff worked as an assistant county prosecutor in the civil division of the prosecutor's office. Because of her previous legal experience in employment law, Marsilio was assigned the majority of the employment cases for the county. (Doc. No. 65 [Smith Dep.] at 975.) During Marsilio's tenure, there were approximately seven to eleven assistant prosecuting attorneys in the criminal division, only two of whom were female, and seven assistant prosecuting attorneys in the civil division, only two of whom were male. (Doc. No. 62-1 [Marsilio Aff.] ¶¶ 10, 11, 51.) It is undisputed that plaintiff was paid as much as or more than any other civil attorney, male or female, and more than all but three of the male criminal attorneys, all of whom (as set forth below) had considerably more experience.

Vigluicci does not prohibit assistant prosecuting attorneys from engaging in private practice due to the limitations on their salary imposed by the county's budget. (Doc. No. 40 at 284.) Vigluicci testified that he permitted civil and criminal division attorneys to engage in private practice outside the prosecutor's office, so long as they dedicated at least 40 hours a week to the prosecutor's office. (Doc. No. 63 at 924-25; Doc. No. 51-2 ¶¶ 17-18.) Indeed, attorneys in both of these divisions have represented private clients outside their work for the prosecutor's office. (Doc. No. 51-2 ¶ 17; Doc. No. 40 at 284.) Marsilio testified, however, that civil division attorneys could not maintain outside employment due to their heavy workload and a directive from Vigluicci that they be "available for their clients" during normal business hours from 8:00 a.m. to 4:30 p.m. (Doc. No. 43 at 341-42; Doc. No. 62-1 ¶¶ 12-13, 18-20, 48-50; Doc. No. 40 at 285.) She also admitted, however, that she never asked her supervisor or Vigluicci if she could engage in private practice, never discussed this with them, and was never told that she could not do so, but felt it was "implied that [she] could not[,]" stating, "It would have been futile." (Doc. No. 43 at 342-43.)[3]

---

[3] In her affidavit, Marsilio also asserts that criminal division attorneys, on the other hand, had sufficient extra time to engage in significant outside employment in addition to their duties as criminal prosecutors, were only infrequently called out on major criminal matters off-hours, and were not required to be present every day. (Marsilio Aff. ¶¶ 12, 17-18.) Further, she asserts she was "told" by a former civil division attorney, Christine Barone, that Barone could not engage in private practice because she did not have time. (*Id.* ¶¶ 48-50.) Defendant objects that this testimony should be disregarded; the Court agrees.

Rule 56(c)(4) of the Federal Rules of Civil Procedure provides that, "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Marsilio testified during her deposition that she never worked in the criminal division, that her interaction with the criminal prosecutors—who worked on a different floor of her building—was limited to "casual conversation" in the building hallways and elevators, that she could not recall specific things criminal division attorneys had said to her, and that she did not know whether criminal division attorneys worked more hours outside the normal business hours of the office. (Doc. No. 43 at 343, 381.) Marsilio's affidavit statements regarding the workload of the criminal division attorneys, therefore, are not based on personal knowledge. Further, Marsilio's testimony with regard to what Ms. Barone told her constitutes inadmissible hearsay for which no exception is readily apparent. Accordingly, the Court will disregard this testimony.

4

Marsilio contends that the pay disparity between criminal and civil division attorneys, as well as the criminal division attorneys' ability to engage in private practice, is due to unlawful gender discrimination. Defendant disputes these contentions, positing that the evidence establishes that the civil and criminal divisions have different job descriptions, supervisors, workloads and training, and that civil division attorneys have greater flexibility, while criminal division attorneys are required to be on call 24 hours a day, 7 days a week.[4] (Doc. No. 68 at 1308; Doc. No. 63 at 902-03, 925; Doc. No. 40 at 283.)

2.  *The Termination of Marsilio's Employment*

It is undisputed that in early 2009, Marsilio and a fellow assistant prosecuting attorney in the civil division, David Brode ("Brode"), ran in elections for open judicial seats on the Portage County Municipal Court and that both had discussions with Vigluicci regarding their intent to run in those elections. Vigluicci avers that—consistent with his past practices in dealing with subordinates who run for office—he advised both Marsilio and Brode that he would not endorse anyone in either race, that their campaigns could not take time away from their work duties, and that he expected them, as assistant prosecutors, to run a campaign that did not reflect poorly on the office or violate the law.[5] (Doc. No. 51-2 ¶¶ 8-9.) From March until September 2009, Marsilio campaigned without incident or criticism from Vigluicci. (Doc. No. 43 at 350.)

---

[4] Defendant's reply brief also contends that the civil and criminal division offices are located in different buildings; however, this is not supported by the record cites identified. Defendant asserts that Assistant Prosecuting Attorney David Brode testified that criminal division attorneys work on the fourth floor of the prosecutor's office, and civil division attorneys work on the second floor of the Administration Building, serving the County Department of Job and Family Services ("CDJFS"). (Doc. No. 68 at 1308.) However, Brode's deposition testimony indicates only that *he* maintains an office in the Administrative Building because he was assigned to the CDJFS. (Doc. No. 40 at 270.) He clarified further that he also maintains an office in the Prosecutor's Office, which, since November 2008, occupies a single building within which the civil division is located on the third floor and the criminal division is located on the fourth floor. (*Id.* at 270, 285); (*see also* Doc. No. 63 at 927 [where Vigluicci testified that the civil and criminal divisions have occupied offices in the same building since November 2008].)

[5] Marsilio can only recall the second of these admonitions (Doc. No. 43 at 346), whereas Brode remembers all three admonitions (Doc. No. 40 at 274).

On September 10, 2009, Marsilio distributed 35 to 45 copies of a draft political advertisement at the Portage County Republican Party's Central Committee meeting. (Doc. No. 43 at 354.) In attendance at that meeting were 33 members of the committee and 14 visitors. (Doc. No. 51-3 [Lyon Aff.] ¶¶ 7-9; Meeting Minutes, Doc. No. 51-3 at 704.) Marsilio cannot recall whether the copies she distributed to the meeting attendees were returned to her at the close of the meeting. (Doc. No. 43 at 354-55.) The advertisement in question provided, "The 'Good Old Boys' Say elect Kevin Poland . . . Real People Say Elect Tommie Jo Marsilio . . . She is not a member of the Ravenna 'Good Old Boys' corruption club." (Marsilio Dep. Ex. 4, Doc. 43-6.)

On September 14, 2009, Vigluicci learned of the draft advertisement when assistant prosecutor, Tom Buchannan ("Buchannan"), provided him a copy. (Doc. No. 51-2 ¶ 10.) He avers that several other people also showed him copies of the advertisement and that a number of people were discussing the ad in the courthouse that morning. (*Id.* ¶¶ 10-11.) He testified that Marsilio's use of the word "corruption" troubled him and that the ad upset him because his office had recently successfully prosecuted two public officials for corruption or other serious crimes. (*Id.* ¶¶ 12-14.)

Later that morning, Vigluicci confronted Marsilio with the advertisement. (*Id.* ¶ 15; Doc. No. 43 at 358.) At this first meeting, Vigluicci instructed Marsilio to cease distribution of the advertisement and to apologize to her opponent, Kevin Poland ("Poland"). (Doc. No. 43 at 358.) After the meeting, Marsilio went out for lunch and purchased a recording device, which

she used to surreptitiously record a follow-up meeting that she had with Vigluicci later that afternoon.[6] (*Id.* at 359.)

At their second meeting, Vigluicci reiterated his request that Marsilio withdraw the ad and apologize to Poland, indicating that he would terminate her if she did not comply with his directive by the end of the week. (*Id.* at 362; Doc. No. 43-7 at 560.) During their recorded conversation, Vigluicci told Marsilio that he disapproved of her use of the word "corruption" because there was no evidence to back up the allegation, and her statement could be construed as levying criminal charges against a public official and fellow attorney. He repeatedly indicated that his concerns would be the same regardless of whom the statement was about because of his office's position as a community based organization, requiring the respect and confidence of the legal community. Vigluicci also stated his expectation that Marsilio apologize for what he viewed as a mistake because, as one of his assistants, she acts for him. (Marsilio Dep. Ex. 5, Doc. No. 43-7 at 552-60.)

Following these meetings, Marsilio provided Vigluicci with a memo stating she would cease distribution of the advertisement, but found "no reason to apologize to Kevin Poland." (Marsilio Dep. Ex. 6, Doc. No. 43-8.) On September 15, 2012, Vigluicci responded to Marsilio's memo with a letter asking her to reconsider her decision and giving her until the end of the workweek (September 18, 2009 at 4:00 p.m.) to comply with his instructions or her employment would terminate at that time. (Doc. No. 43 at 363; Marsilio Dep. Ex. 7, Doc. No. 43-9.)

---

[6] A copy of the transcript of the recorded conversation, which the parties edited and verified as to accuracy, was produced in discovery. (Marsilio Dep. Ex. 5, Doc. No. 43-7.)

During the week in which plaintiff was afforded an opportunity to contemplate her decision, Marsilio sought the legal opinion of an "ethics specialist," attorney Charles Kettlewell ("Kettlewell"), who advised her that the use of the word "corruption" was problematic. Marsilio specifically asked Kettlewell to address whether or not the language used in her political advertisement was acceptable under the Ohio Code of Judicial Conduct. (Doc. No. 43 at 364.) In an opinion letter dated September 16, 2009, Kettlewell stated,

> As we discussed during our call, I have concerns about your statement, 'She is not a member of the good old boy corruption club.' Although when taken individually this sentence is undoubtedly a true statement, it is my opinion that the negative inference to be drawn from it by **a reasonable person** in the context of the whole advertisement is that your opponent is, in fact, a member of the good old boy corruption club. This could, in my opinion, make this statement in a judicial campaign advertisement run afoul of Rule 4.3 [of the Code of Judicial Conduct] in that . . . the totality of the advertisement could be considered 'misleading.'

(Marsilio Dep. Ex. 8, Doc. No. 43-10 at 565) (emphasis in original). Kettlewell advised Marsilio not to run the advertisement as written, but suggested if the word "corruption" was removed, the ad would no longer be misleading. (*Id*.) Marsilio, however, did not inform Vigluicci that she was seeking ethics advice nor did she share the results with him. (Doc. No. 43 at 365.)

On September 18, 2009, Marsilio sent Vigluicci an interoffice memorandum in response to Vigluicci's September 15th letter, reiterating her refusal to apologize to Poland and denying that her advertisement made an allegation of corruption against Poland or that her ad was "improper." (Marsilio Dep. Ex. 10, Doc. No. 43-12 at 568.) Marsilio stated further, "Your only motivation to compel an apology to such a person is political." (*Id*.) She also confirmed that she was "fired as of Friday, September 18, 2009 at 4:00 p.m." (*Id*. at 569.) Other than the exchange of written correspondence, Marsilio had not communicated with Vigluicci since the

8

September 14th meeting and did not speak to him prior to removing her personal items from her office on Friday afternoon. (Doc. No. 43 at 367.)

After her employment ended, Marsilio contends that Brode was quoted by a local newspaper on October 4, 2009, making purportedly similar political statements, but was not disciplined or asked to apologize to his opponent. Specifically, Brode was quoted in a local newspaper as saying:

> My message is that I am not either an insider or a politician. There are too many incidents of politicians and insiders in our judicial system, that provided at least an appearance of special treatment. That message is being well received. . . .

> I don't believe there should be a perception that certain people get favors because of contributions they made to your campaign[.] . . . Lawyers give money to a campaign. The perception is that they will be favored when they walk into your courtroom. . . .

> The [Portage County Bar Association judicial] ratings are an example of the 'good old boy network' [and] nothing but a popularity contest.

(Marsilio Dep. Ex. 15, Doc. No. 43-17 at 593-94.) Brode testified that Vigluicci spoke to him about his statements, cautioning him that he believed he was "getting very close to a line that [Brode] shouldn't be crossing." (Doc. No. 40 at 279.) Vigluicci did not discipline Brode for his statements or ask him to apologize to anyone.

Based on the foregoing, Marsilio filed this action, contending that her termination was the result of gender-based discrimination and that defendant paid male attorneys more than female attorneys on the basis of gender in violation of § 1983 and Ohio Rev. Code §§ 4112.02 and 4112.99.

9

## II.     LAW AND ANALYSIS

### A.  Standard of Review

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

The party opposing the motion may not rely merely on allegations or denials in its own pleading; rather, by affidavits or materials in the record, they must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of an essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Rule 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Mere conclusory allegations "are not evidence and are not adequate to oppose a motion for summary judgment." *Miller v. Aladdin Temp–Rite, LLC*, 72 F. App'x 378, 380 (6th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

10

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (*citing Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

In ruling on a motion for summary judgment, the court may not take into account credibility or the weight of the evidence, nor may it draw inferences from the facts. *Anderson*, 477 U.S. at 255. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* "If the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is improper. *Id.* at 248. Accordingly, for the purposes of deciding this motion, and where communicated properly under Rule 56, plaintiff's account of the facts must be accepted as true.

## B.  The Availability of Immunity on Plaintiff's State Law Discrimination Claims

Before considering the merits of Marsilio's discrimination claims, it is necessary to address liability under the applicable statutes. Vigluicci asserts he is entitled to immunity under Ohio Rev. Code Chapter 2744 in both his individual and official capacities with respect to

11

plaintiff's state law sex discrimination claims (Count III). Plaintiff has not opposed Vigluicci's assertion of state law immunities.

1. *Individual Capacity Immunity*[7]

Vigluicci is entitled to immunity under Ohio Rev. Code §§ 2744.03(A)(6) and 2744.03(A)(7), which when read together provide immunity to county prosecuting attorneys sued in their individual capacity, unless a plaintiff has provided evidence of an exception to this general rule, as delineated in Ohio Rev. Code § 2744.03(A)(6)(a), (b), and (c). Plaintiff has presented no such evidence and, therefore, to the extent plaintiff seeks to hold Vigluicci individually liable under Count III, he is entitled to summary judgment.

2. *Official Capacity Immunity*

An action against a public employee in his or her official capacity is in actuality an action against the entity for which the employee is an agent. As such, an official capacity suit is merely another method for pleading an action against the entity for which the employee is an agent. *State ex rel. Estate of Miles v. Vill. of Piketon*, 121 Ohio St. 3d 231, 235 (2009) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)) (internal quotation marks omitted). In other words, any claim against Vigluicci in his official capacity is a claim against Portage County.

The county, however, is not entitled to immunity on plaintiff's state discrimination claim. Under Ohio Rev. Code § 2744.09, a political subdivision is not entitled to

---

[7] Plaintiff's opposition brief indicates that the parties filed a stipulated dismissal of the claims against Vigluicci in his individual capacity, citing "(RE#:***)[,]" [sic] and stating that it is "both curious and inapposite that Defendant County is now attempting to argue immunity of Vigluicci in his individual capacity in its summary judgment brief." (Doc. No. 62 at 869, 878.) However, although plaintiff has repeatedly and unequivocally indicated to this Court and to defendant that she does not intend to pursue her individual capacity claims against Vigluicci, a review of the record indicates that the parties never filed a stipulated notice of dismissal as plaintiff's counsel represents. Accordingly, these claims have not been formally withdrawn, and the Court must still address Vigluicci's analysis of his individual capacity immunities in his motion for summary judgment. Those arguments stand unopposed.

immunity for actions "by an employee . . . relative to any matter that arises out of the employment relationship between the employee and the political subdivision[.]" Ohio Rev. Code § 2744.09(B) (also precluding immunity, under Ohio Rev. Code § 2744.09(C), for claims by an employee relative to "wages, hours, conditions, or other terms of [] employment[]"). Because plaintiff's state sex discrimination claim arises out of her employment with Portage County, § 2744.09 precludes municipal immunity. *See Kohler v. City of Wapakoneta*, 381 F. Supp. 2d 692, 705 (N.D. Ohio 2005) (sex discrimination claim exempt from immunity, pursuant to § 2744.09, because it relates to the conditions of plaintiff's employment); *see*, *e.g.*, *Gessner v. City of Union*, 159 Ohio App. 3d 43 (Ohio Ct. App. 2d Dist. 2004) (municipal immunity for age discrimination claim unavailable); *Poppy v. Willoughby Hills City Council*, Case No. 2004-L-1015, 2005 WL 1007234 (Ohio Ct. App. 11th Dist. Apr. 29, 2005) (city council not entitled to immunity for gender discrimination claim).

## C.  Plaintiff's Gender Discrimination and Disparate Pay Claims

To succeed on her § 1983 claims, plaintiff must show that Vigluicci, while acting under the color of state law, deprived her of a right secured by the federal constitution or by federal law. *Markva v. Haveman*, 317 F.3d 547, 552 (6th Cir. 2003). Count II of plaintiff's complaint alleges defendant violated § 1983 and the Fourteenth Amendment: (1) by terminating her while male employees who "publicly made similar comments or expressed the same ideas" were not disciplined or terminated; (2) when Vigluicci did not discipline or terminate male employees who engaged in "actual misconduct;" and (3) by "pay[ing] [] female employees less than comparable male employees for the same or very similar work and responsibilities." (Doc.

No. 1 at 4-5.)[8] The parties do not dispute that Vigluicci was acting under color of state law, but they do dispute whether Marsilio was deprived of her constitutional right to equal protection. For the reasons that follow, the Court concludes that there is no evidence from which a reasonable jury could find that Marsilio was unlawfully discriminated against based upon her gender in either her termination or pay.

1. *Discriminatory Discharge Claim*

Individuals have a right, protected by the Equal Protection Clause of the Fourteenth Amendment, to be free from discrimination on the basis of sex in public employment. *Smith v. City of Salem*, 378 F.3d 566, 576 (6th Cir. 2004) (citing *Davis v. Passman*, 442 U.S. 228, 234-35 (1979)). To make out such a claim, plaintiff must prove that she suffered purposeful or intentional discrimination based on gender. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977). The Sixth Circuit has repeatedly held that the showing a plaintiff must make to recover on an equal protection claim under § 1983 is the same showing a plaintiff must make to recover on a disparate treatment claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq. Smith*, 378 F.3d at 577 (collecting cases).

---

[8] Plaintiff's brief in opposition discusses her gender discrimination claims as brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, (Doc. No. 62 at 869, 881), and the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), (*Id.* at 881). Further, she alleges her claims relate to three aspects of her employment: her termination, Vigluicci's disparate treatment of comparators in employment, i.e., the inability of civil division attorneys to engage in private practice while criminal division attorneys allegedly did so, and her compensation. However, Marsilio's complaint seeks relief only under § 1983, not Title VII or the EPA. Further, her complaint alleges only discriminatory discipline and unequal pay, but is devoid of any allegations with respect to her alleged inability to engage in private practice outside the prosecutor's office. Plaintiff has not asked the Court for leave to amend her complaint to include these new claims and allegations, but even if she had, the facts giving rise to these claims have been known to her since the outset of this litigation. "Once a case has progressed to the summary judgment stage, . . . the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506 (2002)] and the Federal Rules] are inapplicable[,]" and allowing plaintiff to add a new claim in response to a summary judgment motion "would subject defendant[] to unfair surprise." *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (citations and internal quotation marks omitted). *See also Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) ("To the extent Bridgeport seeks to expand its claims to assert new theories, it may not do so in response to summary judgment or on appeal.") (citations omitted). Nevertheless, even if these additional claims were properly before the Court, as discussed *infra*, they would still be subject to summary dismissal.

Also, under Ohio law, employees have a statutory right to employment that is free from discrimination on the basis of "race, color, religion, sex, military status, national origin, disability, age, or ancestry . . . ." *See* Ohio Rev. Code § 4112.02(A). "Sex discrimination claims brought under Title VII and § 4112.02 have substantially identical elements . . . ." *Kohler*, 381 F. Supp. 2d at 705 (collecting cases). Furthermore, "federal case law interpreting Title VII . . . is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192, 196 (1981).

Plaintiff does not claim to have direct evidence that her termination was the result of sex discrimination; she seeks, instead, to prove her claim through indirect evidence. (Doc. No. 62 at 881.) Therefore, she must meet the familiar three part burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later clarified by *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). At the first stage, plaintiff must prove a *prima facie* case of sex discrimination. *Burdine*, 450 U.S. at 252-53. Generally, under *McDonnell Douglas* and *Burdine*, a plaintiff can establish a *prima facie* case of sex discrimination by showing that (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was treated differently than similarly situated employees outside of her protected class or that she was replaced by someone outside the protected class.[9] *Lockett v. Marsh USA*, 354 F. App'x 984, 992 (6th Cir. 2009); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 561 (6th Cir. 2004) (citations omitted).

---

[9] Plaintiff does not offer any evidence that she was replaced by someone outside the protected class, electing to attempt to meet her burden of showing a *prima facie* case by demonstrating that individuals outside the protected class received more favorable treatment.

15

If plaintiff establishes a *prima facie* case, the burden then shifts to defendant to "articulate a legitimate, nondiscriminatory reason" for the relevant employment decision. *Burdine*, 450 U.S. at 253 (quoting *McDonnell Douglas*, 411 U.S. at 804). "The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* at 254 (internal citation omitted). If defendant carries this burden, the final stage requires plaintiff to prove that the proffered reason was merely a pretext for unlawful discrimination. *Id.* at 253 (citing *McDonnell Douglas*, 411 U.S. at 804). Pretext is established by a direct showing that "a discriminatory reason more likely motivated the employer" or by an indirect showing that the employer's explanation is not credible. *Id.* at 256; *see Kline v. TVA*, 128 F.3d 337, 342-43 (6th Cir. 1997).

It is undisputed that plaintiff is a member of a protected class, in that she is female. It is also uncontested that she was qualified for her position. Defendant contends, however, that Marsilio cannot satisfy the second prong of the *prima facie* case because she voluntarily resigned her employment. Further, defendant asserts that Marsilio cannot satisfy the fourth prong because she can point to no evidence that similarly situated male employees received more favorable treatment. Even if the Court assumes that plaintiff was terminated, her gender discrimination claims are subject to dismissal because she cannot point to any evidence that, if believed, would establish that individuals outside the protective class received more favorable treatment.

Marsilio has failed to demonstrate that her proposed comparables, Brode and Steve Michniak ("Michniak"), are similarly situated. To be similarly situated, plaintiff and the employees with whom she seeks to compare herself must be similar in "all of the *relevant*

aspects[.]" *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)) (emphasis in original). There is no requirement, however, that the comparable employees be identical to the plaintiff or that there be an exact correlation between all aspects. *See Jackson v. FedEx Corporate Servs.*, 518 F.3d 388, 396 (6th Cir. 2008). Within the disciplinary context, the comparable employees "'must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Jackson v. Int'l Fiber Corp.*, 395 F. App'x 275, 280 (6th Cir. 2010) (quoting *Ercegovich*, 154 F.3d at 352).

A plaintiff, therefore, must demonstrate that her proposed comparators engaged in acts of "comparable seriousness." *Clayton v. Meijer*, *Inc.*, 281 F.3d 605, 611 (6th Cir. 2002) (internal citation omitted). Where the conduct of the plaintiff is "qualitatively more serious" than that of her co-workers, her fellow employees cannot serve as comparables. *Id.* at 612; *see Dickens v. Interstate Brands Corp.*, 384 F. App'x 465, 470 (6th Cir. 2010) ("An employee who steals tangible company property for his own personal use is clearly committing an offense of a qualitatively different nature than one who, apparently unsolicited, clocks a subordinate in and out."); *see*, *e.g.*, *Wright Murray Guard*, *Inc.*, 455 F.3d 702, 710-11 (6th Cir. 2006) (plaintiff, who sexually harassed subordinates, was not similarly situated to co-worker, who permitted an unauthorized person into the facility, where only plaintiff's conduct caused harm to others and was likely to expose the employer to liability); *Henry v. Delta Air Lines*, *Inc.*, No. 2:10-cv-00009, 2011 WL 3444089, at *8-*9 (E.D. Ky. Aug. 8, 2011) (co-worker who requested certain employees to work the airport gate was not similarly situated to plaintiff who intentionally

manipulated the flight boarding process).

<u>David Brode</u>

Brode cannot be considered similarly situated to plaintiff because, though they shared the same job title and each participated in a judicial campaign, they engaged in different conduct, "and the differences in their conduct are relevant." *See Wright*, 455 F.3d at 710. Brode made a statement during his judicial campaign expressing his personal opinion that, in order to avoid the appearance of impropriety, judges should avoid the legal and accepted practice of receiving campaign contributions from attorneys. He did not identify any judge or judicial candidate by name, and he did not accuse anyone of unlawful conduct.

In contrast, Marsilio's statement—"The 'Good Old Boys' Say elect Kevin Poland . . . [Marsilio] is not a member of the Ravenna 'good old boys corruption club'"—identifies her political opponent by name and uses the additional word "corruption."[10] As plaintiff's own ethics counsel noted, the obvious negative inference that flows from plaintiff's statement is that her opponent was either a member of the "corruption club" or was in league with those who enjoyed membership in this allegedly seedy organization. Further, by using the word "corruption," plaintiff suggested that her opponent, and/or those who supported him, were engaged in unlawful conduct.

Use of the term "corruption" was especially troubling, given the fact that Marsilio was employed by the very office that was responsible for bringing criminal charges—including charges of corruption and fraud. Such an allegation by one of the prosecutor's assistants could

---

[10] Marsilio stresses that her statements were not "public" like Brode's. However, this is not supported by the record. Though not formally published in a newspaper, it is undisputed that Marsilio distributed the draft advertisement to some thirty plus persons at a meeting that was open to the public, that she cannot recall collecting the draft back from the meeting attendees prior to the end of the meeting, and that the advertisement was further distributed by someone after the meeting, ultimately reaching Vigluicci's attention.

certainly be construed as being backed by the prosecutor's office and the prosecutor, himself. It was this point that Vigluicci attempted to impress upon Marsilio when he explained in the conversation that plaintiff surreptitiously recorded, "When we have probable cause around here to believe somebody has done something illegal, we go to the grand jury with it. . . . We don't go out in the community with it." (Doc. No. 66-5 at 1016.) In contrast, Brode's general comments on campaign finance practices, which did not implicate anyone in possible illegal conduct, did not raise similar concerns. Because the undisputed facts demonstrate that plaintiff's conduct was qualitatively different, "[n]o improper weighing of evidence is necessary to reach the conclusion" that Brode's conduct was not of "comparable seriousness." *See Colvin v. Veterans Admin. Med. Center*, 390 F. App'x 454, 459 (6th Cir. 2010) (pharmacist co-worker who failed to complete his required paperwork in a timely fashion was not similarly situated to plaintiff because only plaintiff made errors in filling prescriptions—errors which could have caused harm to patients and exposed the employer to legal liability).

    More fundamentally, however, Brode's comments cannot serve as comparable conduct because Marsilio was not discharged because of the campaign statements she made. Instead, the record is clear that Marsilio's employment was terminated because she refused to comply with Vigluicci's instructions to apologize to Poland. (Doc. No. 43 at 363; Marsilio Dep. Ex. 7; Doc. No. 62 at 873 [In her opposition brief, plaintiff notes that "Vigluicci specifically did not fire her for the ad itself . . . but explicitly for refusing to . . . apologize . . . ."]; Doc. No. 62-1 ¶ 32; Doc. No. 65 at 365; Doc. No. 66-10 at 1027.) *See Booker v. Dee Sign Co*., No. 1:06cv667, 2008 WL 839786, at *5 (S.D. Ohio Mar. 26, 2008) (plaintiff was not similarly situated to co-workers who also called off work under false pretenses where plaintiff was discharged for the subsequent insubordination he showed his employer when confronted with his attendance

misconduct). Though Vigluicci warned Brode to be careful with his future press comments, Brode did not need to apologize for his comments because he did not level unsubstantiated allegations of illegal (i.e. corrupt) conduct at anyone. He merely stated that as a policy matter, he was not going to accept donations from attorneys, and, in any event, there was no one to whom he could have apologized. That there was no one specifically identified and, therefore, no one personally damaged by Brode's remarks, also underscores the difference between the conduct. *See Clayton*, 281 F.3d at 612 (plaintiff was not similarly situated to co-workers who had also engaged in similar negligent conduct where only plaintiff's misconduct resulted in serious injury to another employee).

In an attempt to show that she is similarly situated to Brode, plaintiff points to Brode's deposition testimony wherein he explained, three years after the fact, what he meant by "an appearance of special treatment," his perception of the bar association's "good old boys" network, and his opinion that Marsilio's use of the word "corruption" was "exactly what [he] was talking about" in his quoted statement. However, Brode's long after-the-fact explanation as to what he meant when he gave his interview does not change what he actually said during the interview: general policy remarks which, unlike Marsilio's, did not identify another candidate by name and did not use the word "corruption." It is his conduct that is relevant for purposes of comparison, not his subjective impression of it, and, even indulging plaintiff every reasonable inference, the undisputed differences between that conduct and plaintiff's prevent plaintiff from showing that she is similarly situated to Brode. In short, there is no evidence that Brode and Marsilio engaged in the same conduct without differentiating or mitigating circumstances.

Steve Michniak

Marsilio also asserts that Michniak, a male, criminal division felony lawyer, testified at a criminal trial that the Portage County Sherriff's Office was "biased," but Vigluicci did not take any action in response. (Doc. No. 62-1 ¶¶ 39-41; Doc. No. 63 at 899.) Marsilio admits, however, that no transcript is available of Michniak's purported testimony (Doc. No. 62-1 ¶¶ 43-47); instead, her "evidence" of Michniak's testimony is premised exclusively on double hearsay testimony that her colleagues and the county sheriff told her that Michniak testified that the sheriff's department was "biased." Vigluicci testified that while he was aware Michniak had provided testimony in a domestic violence case the week prior to his deposition, he was unaware of the substance of that testimony. (Doc. No. 63 at 899-900.) In fact, Vigluicci could not have discovered the substance of Michniak's testimony because, as Marsilio concedes in her affidavit, the record in that case was sealed.[11] (Doc. No. 62-1 ¶ 44.) Because she cannot point to any evidence that Vigluicci was even aware of the content of Michniak's testimony, she cannot demonstrate that Michniak received more favorable treatment.[12] *See Shockley v. HealthSouth Cent. Ga. Rehab. Hosp.*, 293 F. App'x 742, 745 (11th Cir. 2008) ("Evidence that other employees were guilty of similar misconduct but were not disciplined does not establish that an individual is similarly situated when the party taking the adverse action was unaware of the employees' misconduct.") (citing *Jones v. Gerwens*, 874 F.2d 1534, 1541-42 (11th Cir. 1989));

---

[11] While plaintiff has established, pursuant to Rule 56(d), that the *transcript* is unavailable, she has failed to demonstrate that competent evidence regarding the exact nature of Michniak's testimony is otherwise unavailable.

[12] Further, the circumstances surrounding Michniak's conduct necessitate the conclusion that he is not similarly situated to plaintiff. *See Noble v. Brinker, Inc.*, 391 F.3d 715, 729 (6th Cir. 2004) ("differing and relevant circumstances" between plaintiff's conduct and that of his comparators precluded plaintiff from establishing that his co-workers were similarly situated). While plaintiff volunteered her statements, Michniak was compelled by law to offer his statements as testimony in a criminal proceeding. Even if Vigluicci had known the content of Michniak's testimony, and found it to reflect poorly on the prosecutor's office, he would have been entitled to treat the two situations differently.

*Dinkins v. Suffolk Transp. Servs.*, No. 07-CV-3567, 2010 WL 2816624, at *10 (E.D.N.Y. July 15, 2010) (citing cases from the 5th, 7th, 8th, and 11th Circuits, and finding that "[a]n employee who allegedly engaged in misconduct comparable to the plaintiff's is not similarly situated to the plaintiff when the employer is unaware of what the comparator employee supposedly did").

Viewing the evidence in a light most favorable to Marsilio, the Court finds that she has failed to establish that there were non-protected employees who engaged in the same or similar conduct such that the Court could analyze the treatment of those employees against the treatment of Marsilio for purposes of a gender discrimination claim. *See Pittman v. Cuyahoga Valley Career Ctr.*, 451 F. Supp. 2d 905, 918–19 (N.D. Ohio 2006) (a plaintiff must point to specific facts in the record to establish evidence of acts of comparable seriousness and may not rely on vague allegations and subjective beliefs and claims).[13] Accordingly, plaintiff has failed to satisfy the last prong of the *McDonnell Douglas prima facie* case.

Even assuming *arguendo* that plaintiff had established a *prima facie* case of discriminatory discharge, defendant has set forth legitimate, non-discriminatory reasons as to why Marsilio, regardless of gender, was terminated for failing to comply with Vigluicci's directive. Vigluicci testified that he viewed Marsilio's statement as an unsubstantiated allegation of corruption against a public official and it is undisputed that he communicated this to her during their recorded meeting and indicated to her that he believed her statement reflected poorly on his office. Moreover, plaintiff does not dispute, and because of the verified recording cannot

---

[13] Moreover, to the extent that Marsilio relies on evidence that Vigluicci favored the criminal division attorneys, who were mostly male, and did not permit civil division attorneys the same opportunity to hold outside employment, as discussed *supra*, this claim was never alleged in her complaint and is not supported by the record. Nor is there any evidence that Marsilio was treated differently or inferiorly. Indeed, she testified that she never even sought a transfer to the criminal division, never asked to engage in outside employment, and was never told that she could not maintain a private practice. (Doc. No. 43 at 342.) Further, the uncontroverted testimony in the record indicates that several civil attorneys—both male and female—did in fact engage in outside practices and employment. (Doc. No. 51-2 ¶ 17; Doc. No. 40 at 284.)

dispute, Vigluicci's testimony that his chief concern was her use of the word "corruption" while referring directly or indirectly to her political opponent, as opposed to the term "good old boys club" standing alone. (Doc. No. 63 at 921.) This evidence easily satisfies defendant's burden of articulating a non-discriminatory reason for the adverse employment action, and the burden now shifts to Marsilio to present evidence that Vigluicci's reason for terminating her was pretext for unlawful discrimination based on gender. *Burdine*, 450 U.S. at 253 (citing *McDonnell Douglas*, 411 U.S. at 804).

Marsilio, however, has failed to present *any* evidence to show that "a discriminatory reason more likely motivated" the adverse employment decision, or that the articulated reason is not credible. *Burdine*, 450 U.S. at 256; *Kline*, 128 F.3d at 342-43. In fact, other than the bald, conclusory statement that Vigluicci's directive was "political", Marsilio's opposition to summary judgment does not even attempt to refute defendant's articulated reason for Marsilio's separation, arguing instead that the county "has wrapped up 'pretext'" for discrimination with its "general arguments; thus, [plaintiff] need not parse it out." (Doc. No. 62 at 885 n.12.) Instead, plaintiff cites *Wilson v. Zanesville*, 954 F.2d 349, 350-51 (6th Cir. 1992), presumably for the proposition that the movant "always bears the burden of demonstrating the absence of a genuine issue as a material fact." *Id.* While this is true, within the context of the *McDonnell Douglas/Burdine* burden-shifting framework, plaintiff still must discharge her burden of rebutting defendant's articulated non-discriminatory reason. *Burdine*, 450 U.S. at 256 ("Plaintiff retains the burden of persuasion . . . [and] must . . . demonstrate that the proffered reason was not the true reason for the employment decision.") At the summary judgment stage, this requires plaintiff to "produce[] evidence from which a jury could reasonably doubt the employer's explanation." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009). It is

this burden that *plaintiff* has completely failed to satisfy, and her discriminatory discharge claim fails for this additional reason.

    2. *Disparate Pay Claim*

    Marsilio's complaint also alleges that defendant paid its female assistant prosecutors less than their male counterparts in violation of § 1983. The analysis of wage discrimination claims under Title VII or § 1983 is substantially similar to the analysis of claims brought under the Equal Pay Act. *See Kovacevich v. Kent State Univ*., 224 F.3d 806, 820 (6th Cir. 2000); *Conti v. Universal Enters.*, 50 F. App'x 690, 698 (6th Cir. 2000); *Buntin v. Breathitt Cnty. Bd. of Educ*., 134 F.3d 796, 801 (6th Cir. 1998) ("a finding of liability under the Equal Pay Act requires a similar finding of liability under Title VII"); *Korte v. Diemer*, 909 F.2d 954, 957 (6th Cir. 1990) (same)."The plaintiff must ordinarily show that the employer paid different wages to employees of opposite sexes for substantially equal work[,]" *Conti*, 50 F. App'x at 698 (citing *Henry v. Lennox Indus., Inc.*, 769 F.2d 746, 752 (6th Cir. 1985)), "[in] jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *E.E.O.C. v. Romeo Cmty. Schs.*, 976 F.2d 985, 987 (6th Cir. 1992) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)) (internal quotation marks omitted).

    "Whether two jobs are substantially equal must be determined on a case-by-case basis," and the analysis "involves an overall comparison of the work, not the work in its individual segments." *Follas v. Bagley*, No. 3:99CV7746, 2000 WL 251658, at *3 (N.D. Ohio Feb. 10, 2000) (citing *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981)). "Job classifications and titles are not dispositive[,]" *Hill v. City of Pine Bluff*, 696 F.3d 709, 712 (8th Cir. 2012) (citation omitted); rather, the Court's focus is on the actual job requirements. The

24

Court's comparison at the prima facie stage is of "the skills and qualifications actually needed to perform the jobs . . . . Factors like education and experience are considered as a defense to an employer's liability rather than as part of a plaintiff's prima facie case." *Beck-Wilson v. Principi*, 441 F.3d 353, 362-63 (6th Cir. 2006) (internal quotation marks and citations omitted).

Once plaintiff establishes a *prima facie* case, the burden shifts to the employer to show that the wage differential is justified under one of the four affirmative defenses set forth under § 206(d)(1) of the EPA: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex. *Beck-Wilson v. Principi*, 441 F.3d 353, 369 (6th Cir. 2006) (citing *Washington Cnty. v. Gunther*, 452 U.S. 161, 167-71 (1981)); 42 U.S.C. § 2000e-2(h). "The Sixth Circuit has held that a wage differential based on education, experience, different job levels, different skill levels, previous training, or prior salary constitutes a factor other than sex under the EPA." *E.E.O.C. v. Home Depot U.S.A., Inc.*, No. 4:07CV143, 2009 WL 395835, at *9 (N.D. Ohio Feb. 17, 2009) (citing *Balmer v. HCA, Inc.*, 423 F.3d 606, 612 (6th Cir. 2005), *abrogated on other grounds*, 131 S. Ct. 2205, 2214 (2011)) (citations omitted). The defendant bears the burden of proof with respect to these four affirmative defenses. *Beck-Wilson*, 441 F.3d at 360. Although the burden for proving that a factor other than sex is the basis for a wage differential is a heavy one, if proven, the defendant is absolved of liability as a matter of law. *Kovacevich*, 224 F.3d at 826-27; *Timmer v. Michigan DOC*, 104 F.3d 833, 843 (6th Cir. 1997). At the summary judgment stage, the defendant "must demonstrate that there is no genuine issue of fact as to whether the difference in pay is due to a factor other than sex." *Beck-Wilson*, 441 F.3d at 365.

If the defendant meets this burden such that "a reasonable jury viewing defendant's evidence could only find for the defendant," the plaintiff "bears the burden of

25

producing evidence creating a triable issue of fact that the reasons proffered by [the d]efendant[] are pretextual." *Balmer v. HCA*, *Inc.*, 423 F.3d 606, 613 (6th Cir. 2005) (internal citations omitted).  This is a burden of *production* only. *Buntin*, 134 F.3d at 799-800 n.7. "Under the EPA . . . the plaintiff never bears the burden of persuasion regarding the affirmative defenses." *Beck-Wilson*, 441 F.3d at 359-60 (citations and internal quotation omitted).

        In an effort to establish her *prima facie* case, plaintiff points to evidence that she was paid less than three male attorneys in the criminal division—Buchannan, Michniak, and Eugene Muldowney ("Muldowney"). (Doc. No. 62 at 886; Doc. No. 66-26.) Painting with an extremely broad brush, plaintiff argues that attorneys working in the civil and criminal divisions had substantially similar job descriptions, requiring the same qualifications and skills, and that both civil and criminal attorneys practiced in state and federal court. However, plaintiff's claims are not supported by evidence that shows the criminal division prosecutor position and Marsilio's job required substantially "equal skill, effort, and responsibility" and "were performed under similar working conditions."

        The uncontroverted evidence demonstrates that the civil division has one job description and its attorneys tend to civil issues presented by various county or township officials and boards, while the criminal division has several job descriptions and its attorneys prosecute and handle cases falling within the criminal code provisions of the Ohio Revised Code. (Doc. No. 63 at 902; Doc. No. 51-5.) And while criminal division attorneys appear almost daily in state courtrooms with only occasional habeas actions in federal court, civil division attorneys spend very little time in courtrooms and practice in both state and federal courts, as well as before administrative agencies. (Doc. No. 63 at 902; Doc. No. 40 at 283; Doc. No. 51-2 ¶¶ 24.) Further, criminal division attorneys are required to perform additional duties that are substantially

26

different from the duties that Marsilio performed, including, for example, being on-call 24-hours a day, seven days a week, meeting with defense attorneys to negotiate pleas, formulating sentence recommendations in juvenile cases, trying felony criminal offenses, writing and approving appeals, and responding to legal inquiries from law enforcement personnel. (Doc. No. 51-5 at 727.) Under these circumstances, plaintiff has failed to produce sufficient evidence to demonstrate a *prima facie* case of pay discrimination. *See Conti*, 50 F. App'x at 699-700; *Timmon v. Servicemaster Co.*, No. 96-1655, 1997 U.S. App. LEXIS 13703, at *3-*6 (6th Cir. June 5, 1997) (no EPA violation where residential sales representatives were required to perform additional, substantially different duties from those plaintiff performed in telephone sales); *Day v. Krystal Co.*, 471 F. Supp. 2d 874, 892 (E.D. Tenn. 2007) (while plaintiff shared some "general responsibilities" with her three comparators, each of these positions involved different functions that made comparison for equal pay analysis inappropriate); *Follas*, 2000 WL 251658, at *4 (without evidence of substantially equal duties, no *prima facie* case); *Best v. Janerich*, 80 F. Supp. 2d 334, 336-37 (M.D. Pa. 1999), *aff'd*, 208 F.3d 205 (3d Cir. 2000) (any additional duties/differences in quantity of work rendered jobs incomparable for equal pay analysis).

Moreover, even assuming *arguendo* that plaintiff had established a *prima facie* case against the county, defendant has set forth and supported its reasons as to why Marsilio, regardless of sex, was paid a lower salary than Buchannan, Michniak, and Muldowney. In his affidavit, Vigluicci averred that "[a]ll my assistant prosecutors are paid on an objective formula whereby they receive compensation based upon their pay grade and step/level." (Doc. No. 51-2 ¶ 25.) He elaborated in his deposition, wherein he explained that, pursuant to the Compensation Management System ("CMS"), employees are placed in certain grades and steps, based upon their training, education, and experience. (Doc. No. 63 at 900-01, 903, 924.) While plaintiff notes

27

that the CMS has been "dormant" since 2007, Vigluicci's uncontroverted testimony established that the dormancy of the CMS referred only to the fact that salaries had not been increased to reflect prevailing wages of other nearby communities since approximately 2006 or 2007 because the funding from the county had not been available to effectuate such increases. (*Id.* at 901, 932.) Prior to that time, however, employees received salary increases. For example, Vigluicci testified that Muldowney and Buchannan both were the recipients of raises during their tenure with the prosecutor's office. (*Id.* at 924 ["They've had the benefit of some raises along the [way]. So yes, that's why they're more highly paid."].) Even though the CMS has recently lacked the funds to permit raises, the system, itself, including the designation of employees by pay grade and step, has remained in effect. (*Id.* at 901.)

There is no dispute that these male attorneys were paid more than Marsilio. But, "the law is clear that an employer may reward experience and consider prior salary without violating the EPA." *Best*, 80 F. Supp. 2d at 337 (citing *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520 (2d Cir. 1992)) (further citation omitted). Here, it is undisputed that Muldowney and Buchannan have each worked for the prosecutor's office for more than 20 years and Michniak has worked there for more than eleven years, while Marsilio was only employed with the office for a little over two years. (Doc. No. 51-6; Doc. No. 63 at 924.) Further, the record also reveals that Michniak was assigned additional duties beyond serving as an assistant prosecutor, including leading the office's Special Victim's Unit, serving as an instructor for the National College of the National District Attorneys Association, and taking matters to the grand jury. (Doc. No. 51-2 ¶ 26.) Marsilio has not presented any evidence that she was assigned similar additional duties. In sum, defendant has demonstrated that the wage differential between Marsilio and these male employees is due to factors other than sex—i.e., experience, different

job duties, and additional different job duties. Defendant has established that there is no genuine issue of material fact regarding whether the wage disparity between plaintiff and the named criminal division attorneys was due to a factor other than sex. *See Balmer*, 423 F.3d at 612 (a wage differential based on education, experience, different job levels, different skill levels, previous training, and/or prior salary constitutes a factor other than sex under the EPA); *Irby v. Bittick*, 44 F.3d 949, 955 (11th Cir. 1995) (prior salary coupled with experience are permissible factors other than sex).

Marsilio, has failed to raise a genuine issue of material fact as to whether defendant's affirmative defense is prextual. *Buntin*, 134 F.3d at 799-800 n.7. The attorneys in the prosecutor's office were compensated under an objective pay system that recognized and rewarded experience, and it is undisputed that plaintiff's comparators had vastly more experience than plaintiff. Plaintiff has pointed to nothing in the record that would call into question that payment scheme, and the fact that she was paid as much as the highest paid male attorney in the civil division and more than four of the criminal division attorneys, both male and female, and received the highest pay rate of any new hire, only serves to reinforce the objectiveness of the salary determinations in the prosecutor's office.[14] (Doc. No. 66-26; Doc. No. 63 at 932.) In short, there is no evidence of pretext, and no reasonable jury could conclude that the wage differentials

---

[14] As was the case with her discrimination claim, plaintiff has failed to address the issue of pretext, arguing only that "there is evidence in the record from which a jury could well find that she, along with the other female assistant prosecutors, are paid less than their male counterparts." (Doc. No. 62 at 887.) Even if this were true (and the record indisputably shows it is not), plaintiff still had a burden of production to come forward with *some* evidence that would create a genuine issue of material fact as to whether the differences in pay are the result of unlawful gender discrimination. To the extent plaintiff seeks to show pretext by pointing to the ability of criminal division attorneys to maintain a private practice, the undisputed evidence establishes that Vigluicci's standing position was that all attorneys in the prosecutor's office were permitted to engage in private practice, so long as they devoted 40 hours per week to county work. (Doc. No. 51-2 ¶ 18.) Plaintiff's subjective belief that it is "counterintuitive" that criminal division attorneys put in 40 hours per week, or her unsubstantiated suspicion that Vigluicci turned a "blind eye" to the misuse of office by these attorneys, without more, is insufficient to meet even her limited burden of production. *See Robinson v. Honeywell*, 53 F. App'x 379, 381 (7th Cir. 2002) (plaintiff's subjective belief that she was deserving of higher pay was insufficient to establish pretext).

were due to sex. Accordingly, defendant is entitled to summary judgment on Marsilio's federal wage discrimination claim.

### III.    CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment as to Count I is **DENIED AS MOOT** and, as to the remaining counts, is **GRANTED**. This case is **DISMISSED**.

**IT IS SO ORDERED**.

Dated: April 30, 2013

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**